COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF the Iowa STATE BAR ASSOCIATION, Complainant,

v.

Ronald E. SILVER, Respondent.

No. 86–818.

Supreme Court of Iowa.

Nov. 12, 1986.

Rehearing Denied Dec. 15, 1986.

James E. Gritzner and Kasey W. Kincaid of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, for complainant.

Michael W. Liebbe and Kent A. Simmons of Liebbe & Simmons, Davenport, for respondent.

HARRIS, Justice.

This lawyer disciplinary proceeding stems from a conversion of funds which were proceeds of a real estate sale. The commission found that the conversion took place but dismissed the charge in the belief that we recognize the defense of insanity or diminished responsibility in a lawyer disciplinary proceeding. On review we determine that no such defense is appropriate and order license revocation.

Respondent Ronald E. Silver was retained to assist the executor in the probate of a decedent's estate. A house was sold and the net proceeds of $31,789.60 were deposited in Silver's office trust account.

During the following six months Silver withdrew sums totaling $13,960.71 from the account for his personal use. The withdrawals were without the knowledge or consent of the executor. When the executor inquired about the distribution of the funds Silver misled him about the delay, stating there was a need to await a tax refund. The statement was false and was made only to delay distribution until Silver hoped to return the money he had taken.

The delay in distribution became the subject of inquiry by the local grievance commission of the Scott County bar association. Silver at first told the local bar investigator the same falsehood but later admitted otherwise. He thereafter made restitution in the amount of $17,000. This amount included the converted funds, interest, and attorney fees which had been paid by the estate to collect the funds.

Silver admits he took the funds but attempts to justify his conduct by way of claimed war experiences. Those undocumented experiences came into the record by Silver's sworn testimony. There is no need to detail Silver's description of those events, or to speculate on their authenticity. He graphically related remarkable scenes of cruel violence and intolerable danger. He ascribes his conduct to stress associated with the scenes he described.

█ Although we hold grave doubts about any correlation between experienced violence and dishonest conduct, we rest our determination on a different ground. As mentioned, Silver urges, and the commission held, that insanity or diminished responsibility could be offered as a defense in lawyer discipline cases. It cannot. Silver seizes on language he takes out of context from our decision in *Committee on Professional Ethics and Conduct v. Holmes:*

> In these proceedings, civil in nature, respondent's shield of protection based upon mental defects should be no broader than that applicable in criminal cases as set out above.

271 N.W.2d 702, 704 (Iowa 1978).

*Holmes* did not, as Silver contends, make criminal defenses available to lawyers charged in disciplinary cases. Our *Holmes*

opinion merely pointed out that the lawyer in that case had no basis to contend for such a defense. Because Holmes could not have prevailed in his defense under a criminal charge he was in no position to urge us to adopt his theory of defense in a disciplinary proceeding.

■ Those who equate lawyer discipline cases with criminal prosecutions fail to grasp the perspective in which we view the proceedings. To be sure, a criminal act sometimes precipitates a lawyer disciplinary proceeding. But the proceeding is not strictly criminal in nature. Its purpose is not alone, or even primarily, intended to punish the lawyer. Rather the primary goal in disciplinary cases is to protect the public.

■ Silver's conduct violated a number of disciplinary rules and ethical considerations listed in the code of professional responsibility for lawyers. The specific violations are outlined in *Committee on Professional Ethics and Conduct v. Pappas*, 313 N.W.2d 532, 533–34 (Iowa 1981). We are convinced Silver's license must be revoked.

What we have said makes it unnecessary to discuss a less serious charge (commingling his personal funds with his office trust account) for which the commission recommended a three-month suspension. By reason of our foregoing action the second charge becomes essentially moot.

LICENSE REVOKED.

All justices concur except Neuman, J., who takes no part.