Frank A. CARTER, Jr.

v.

Ralph J. GONNELLA.

No. 87–237–M.P.

Supreme Court of Rhode Island.

June 15, 1987.

Frank A. Carter, Jr., Disciplinary Counsel, Barry Kusinitz, Sp. Disciplinary Counsel, Providence, for plaintiff.

Robert B. Mann, Providence, for defendant.

OPINION

PER CURIAM.

This is a disciplinary proceeding in which we have asked the respondent, Ralph J. Gonnella, a member of the Rhode Island Bar since February 1969, to show cause why he should not be disciplined. The show-cause order was issued following our receipt of a report of this court's disciplinary board recommending that the respondent be disbarred. The board's report and recommendation was preceded by a hearing before one of the board's hearing panels during the summer of 1986. There is no dispute about the facts that brought about the disbarment recommendation. Hereafter we shall refer to the respondent by his last name.

In late September 1982, Gonnella was trial counsel for a parent who was seeking damages for the serious eye injuries suffered by her minor son when a glass storm door located in a Warwick apartment complex shattered. The Superior Court jury awarded damages in the amount of $600,000, as well as an award for medical expenses incurred in the treatment of the minor. Shortly after the jury had made its award, a structured settlement was devised. It called for the payment of $192,000 in counsel fees and periodic payments to the child's mother. Gonnella received his fee, but the minor and the mother were not so fortunate.

The first payment from the insurer for the minor's benefit was due in mid-February 1983. Payment was not made by Gonnella until August 1983 when he forwarded the mother a check for $85,000. This check was returned on two occasions to the mother with notations by the bank of "insufficient funds." Checks sent to the various medical creditors were rejected for the same reason. The first time Gonnella advised the mother that he no longer had possession of the funds furnished him by the insurer was in October 1983. The board found that Gonnella was indebted to the child and the child's mother in a total amount of $106,359.27.

One of those who rendered services to the minor son was an ophthalmologist. He had been advised by Gonnella that the matter was in litigation. Despite the settlement, Gonnella never remitted any of the money due the ophthalmologist although he had conceded that it was his obligation to do so. The amount in question was $420.

In early August 1983 Gonnella received a check for $100,000 in settlement of an antitrust action that had been instituted in the United States District Court for the District of Rhode Island. The check was made payable to the joint order of the plaintiff and Gonnella's law firm. Gonnella forged the client's signature and then endorsed the check on behalf of his firm. The case had been referred to Gonnella by another Rhode Island attorney who made numerous calls seeking to determine the status of the settlement negotiations. During this period Gonnella indicated that he had not received any of the funds although he had, in fact, received the $100,000 check. Records indicate that Gonnella received the check in early August 1983 and deposited it in his office account in mid-August 1983. It was not until late September 1983 that he advised the forwarding attorney of the misappropriation.

In April 1983 a group of employees who worked in Taunton, Massachusetts hired Gonnella for the purpose of obtaining severance pay allegedly due the employees as a result of the sale of the plant where they had been employed. Gonnella received a retainer of $6,000. He wrote a letter on behalf of the employees. When no action seemed to be forthcoming, the employees demanded return of their retainer. They were advised by Gonnella that he was entitled to $1,200 for his work on the case. However, he never remitted the $4,800 balance to the employees.

During the summer of 1983 Gonnella effectuated the settlement of a claim that a widow had against a well-known manufacturer of pharmaceuticals. Consequently, the manufacturer's insurer issued a check in the amount of $40,000 to the client "individually and on behalf of all the beneficiaries" of the husband's estate. Gonnella received the check in late June 1983, en-

dorsed the client's name without her authorization, and deposited the check into his account. However, he made no payments to the client from the settlement proceeds. On numerous occasions he advised the client that he had not received the settlement check, saying that the insurance company was responsible for the delay because it was taking a tax advantage by not issuing the check until the new year began on January 1, 1984.

In December 1981 Gonnella was the attorney for a parent of a student who was attending a school in Massachusetts. Gonnella wrote to the school's headmaster, advising the official that the school's tuition bill would be deemed a lien on funds due the parents from the settlement of a pending suit. He assured the headmaster that the sum of $11,150 would be forwarded directly to the school. In February 1983 Gonnella advised the headmaster that the suit had been settled and the check would be forwarded in two weeks. Time marched on and phone calls from the school relative to the status of the check were evaded. Checks were sent to the school on numerous occasions, but returned for insufficient funds. The school was never paid.

Gonnella has acknowledged that he used the funds to which we have referred to further his gambling efforts in the futures market.

Throughout this controversy Gonnella has sought to mitigate his failure to abide by the Professional Code of Responsibility by pointing to his prior good behavior, his attempts at restitution, and the defense of—for want of a better term—"mental illness."

■ One of the witnesses to testify on behalf of Gonnella was a psychiatrist who, at the time in question, was the chief consultant to the forensic unit at the State's Institute of Mental Health. This witness described Gonnella's mental status during the period of the 1983 misappropriations as a "manic depressive or bipolar affective disorder." Such a condition, he said, "would have affected his judgment to the point where he would have been grandiose and not cognizant of the effects of his actions." We believe that this testimony may be interesting, but it is also irrelevant.

*Carter v. Ross*, 461 A.2d 675 (R.I. 1983), involved a disciplinary proceeding in which an attorney who had misappropriated funds sought to mitigate any sanction by reminding us that he was an alcoholic. There we said that public confidence in the judicial system as a whole requires that the strictest discipline be imposed in instances in which there is a misappropriation of client's funds. "This court," we said, "is charged with the responsibility of doing everything within reason to safeguard a client's funds from an unfit attorney, whatever the cause of his unfitness may be." *Id.* at 676.

■ Recently in *Committee of Professional Ethics and Conduct of the Iowa Bar Association v. Silver*, 395 N.W.2d 877 (Iowa 1986), the Supreme Court of Iowa rejected "insanity or diminished capacity" as a defense in disciplinary proceedings, making the following comment:

"Those who equate lawyer discipline cases with criminal prosecutions fail to grasp the perspective in which we view the proceedings. To be sure, a criminal act sometimes precipitates a lawyer disciplinary proceeding. But the proceeding is not strictly criminal in nature. Its purpose is not alone, or even primarily, intended to punish the lawyer. Rather the primary goal in disciplinary cases is to protect the public." *Id.* at 879.

These sentiments are similar to those expressed in the *Ross* proceeding and furnish further support for the position we shall take here. Gonnella's mental difficulties, his years of good behavior, and his alleged attempts at restitution carry no weight in this controversy.

Gonnella's conduct has violated a number of the provisions [1] set forth in our Code of

---

1. During the period in which the misappropriation of client's funds occurred, Gonnella engaged in fraudulent and deceitful conduct, a violation of DR 1–102 A(4). He also completely ignored DR 9–102 B(1), which requires a prompt notification to the client of the attor-

Professional Responsibility, and it is obvious that the disciplinary committee's recommendation that he be disbarred is amply justified.

Consequently, it is hereby ordered and directed that the respondent, Ralph J. Gonnella, be and hereby is disbarred from the practice of law before the courts of this state.[2] He is also ordered to comply with the provisions of our Rule 42–15(a), and (b), and to furnish the Clerk of this Court on or before June 22, 1987, with the names and addresses of any and all clients presently represented by him.[3]

---

ney's receipt of funds belonging to the client, as well as DR 9–102 B(3)'s mandate that an attorney maintain complete records of all funds coming into his or her possession and render an appropriate account to the client regarding such funds.

2. At this time Gonnella is awaiting trial in the Superior Court on an indictment and criminal information, both of which were returned in 1984. The indictment concerns the $100,000 settlement, and the information is based upon the $40,000 due the widow.

3. In March 1984 Gonnella agreed to the entry of an order from this court calling for his immediate withdrawal from the practice of law until the charges lodged against him were resolved. The order did, however, permit Gonnella to continue as appellate counsel in antitrust litigation in the United States Court of Appeals For the First Circuit. This litigation is entitled *Home Placement Service, Inc. v. Providence Journal Co.* On June 1, 1987 the Circuit Court published an opinion in which it described the suit as "[t]his aged and oft-detoured antitrust case * * *." The court approved the District Court judge's nominal damage award to the plaintiff of $3.00 but reduced a $74,055.16 counsel fee previously awarded to Gonnella and his co-counsel. Gonnella's fee was reduced to $59,179.