745 P.2d 939

**In the Matter of a Member of the State Bar of Arizona, Charles R. HOOVER, Respondent.**

**No. SB–86–0033–D.**

Supreme Court of Arizona,
En Banc.

July 21, 1987.
Rehearing Denied Sept. 15, 1987.

Beer & Toone by Paul Beer, Warner, Angle, Roper & Hallam by Jerry Angle, Phoenix, for respondent.

Harriet Turney, State Bar of Arizona, Phoenix, for State Bar.

FELDMAN, Vice Chief Justice.

The State Bar of Arizona charged respondent Charles D. Hoover, a lawyer, with violations of the Code of Professional Responsibility adopted by this court. *See* Former Rule 29(a), Ariz.R.S.Ct., 17A A.R.S. (Supp.1984–85).[1] Respondent admitted violating the Code, but claimed that his infractions were the product of a mental disease. After hearing evidence, including expert testimony, a Local Administrative Committee (Committee)[2] assigned to Hoover's case by the Disciplinary Commission (Commission)[3] of this court recommended that respondent not be disciplined because he was mentally ill when he committed the violations. In addition, the Committee concluded that respondent had regained his competency to practice law and should be permitted to practice. The Commission rejected the Committee's findings, conclusions, and recommendations, and ordered the matter remanded to a new committee for a de novo hearing.

Respondent petitions this court to review the Commission's order and to grant relief pursuant to Rule 55(i). We granted review to examine whether insanity meeting the *M'Naghten* test is an absolute bar to discipline, and because the proceedings implicate significant issues of procedural due process.

---

1. By administrative order dated September 7, 1984, this court deleted former Rules 27 through 49 of the Rules of the Supreme Court and provided that "amended Rules 27 through 121, Rules of the Supreme Court, be substituted in their place, effective February 1, 1985." 139 Ariz. LXXIX. The administrative order further provided that substantive matters pertaining to conduct that had occurred prior to February 1, 1985 would be governed by former Rule 29(a), which embodied the Code of Professional Responsibility, while conduct occurring after February 1, 1985 would be governed by the amended rules, mainly Rule 42, adopting the Rules of Professional Conduct based upon the model rules of the American Bar Association. The administrative order further provided that procedural matters would be governed by the former rules in all cases where the determination of probable cause had been made prior to February 1, 1985 and by the new rules where the determination of probable cause was made after that date. At oral argument, the parties agreed that the procedural rules that govern this matter are those incorporated in amended Rules 27 through 121, which became effective February 1, 1985. Accordingly, and with unavoidable confusion, the substantive aspects of this case will be governed by the former Code of Professional Responsibility, while the procedural aspects of the case will be governed by the current provisions to be found in Rules 46 through 60, Ariz.R.S.Ct., 17A A.R.S.

For the remainder of this opinion, the current Rules of the Supreme Court will be cited as Rule ___, while the former rules will be cited as former Rule ___.

2. *See* Rule 48.

3. *See* Rule 47.

## FACTS

Respondent was admitted to the State Bar in 1957. He has a long history of successful practice and public service to the Bar and the community. Respondent unconditionally admits, however, that between January and June 1984, he misappropriated substantial sums from a client and fraudulently billed personal expenses. He claims that his actions were a product of a manic depressive psychosis. After the defalcations were discovered, Hoover voluntarily suspended practice and sought medical treatment. A psychologist, and two psychiatrists, one of whom was appointed by the Committee, testified that respondent had been mentally ill during 1984.

The Committee adopted bar counsel's proposed findings that Hoover's defalcations were the product of a mental disease known as bipolar manic depressive disorder, and that he should not be disciplined for his conduct because he had been "insane" under the *M'Naghten* test.[4] *See, e.g., State v. Schantz*, 98 Ariz. 200, 403 P.2d 521 (1965), *cert. denied*, 382 U.S. 1015, 86 S.Ct. 628, 15 L.Ed.2d 530 (1966); A.R.S. § 13–502 (Supp.1986). Because of this biochemical illness, Hoover "did not know the nature and quality of his acts" and "did not know what he was doing was wrong." Findings of Fact Nos. 8 and 9. In addition, the Committee agreed with Hoover and the experts that he had recovered sufficiently to practice law so long as he was monitored and received continued psychological and psychiatric treatment. Finding No. 14; Conclusion of Law No. 5. Accordingly, with Hoover's concurrence, bar counsel recommended that the complaint be amended to conform to the evidence, "converting" the Rule 53 disciplinary proceedings into a

Rule 59 disability proceeding. Finding No. 15; Conclusion of Law No. 3. The Committee determined that it could do this because it had concurrent jurisdiction over both disciplinary and disability proceedings, and the goals of bar proceedings would be served better by allowing Hoover to practice conditionally. Conclusions of Law Nos. 5 and 6. Hoover concurred with the Committee's formal findings, conclusions, and recommendations.

The Committee's work then came before the Disciplinary Commission for review. *See* Rule 53(d).[5] Before the hearing date, the executive director of the State Bar, presumably acting pursuant to board of governors' instructions, replaced bar counsel with its chief bar counsel.[6] New counsel filed a motion to vacate the Committee's findings, conclusions, and recommendations on the ground that the Committee lacked the authority to convert disciplinary proceedings into disability proceedings. Over Hoover's objection, the Commission then rejected the Committee's work and remanded the matter to a new committee for a de novo hearing on all issues. In addition, the Commission directed the new committee to address the legal question whether "insanity under the *M'Naghten* standard acts as a bar to a disciplinary proceeding...."

Hoover contends that the Commission lacked authority for its actions and violated his constitutional right to due process.

## JURISDICTION

■ Bar counsel contends that this court lacks jurisdiction to review the Commission's order of remand because decisions of the Commission "shall be final as to dismissal, *remand*, probation and repri-

---

**4.** *M'Naghten's Case*, 10 Clark and Fin. 200, 8 Eng.Rep. 718 (1843).

**5.** The Commission is enjoined to:
Review the findings, conclusions and recommendations of ... hearing committees with respect to any discipline matters, petitions for transfer to and from disability inactive status, and applications for reinstatement ... with the same scope of review as is exercised by this court ... and in appropriate cases prepare and forward to the court its own findings, conclusions and recommendations....

Rule 47(g)(1).

**6.** "Bar counsel," as used in this opinion, means either counsel employed by the State Bar as a member of the staff or private counsel appointed by the State Bar to represent it in discipline and disability proceedings. *See* Rule 46(g)(2). "Chief bar counsel" is the lawyer employed by the State Bar to work under the direction of the executive director and to administer the Bar's discipline and disability system. *Id.*

mand...." Rule 53(d)(2) (emphasis added). In our view, the Bar has misconstrued the quoted finality provision. Commission orders imposing discipline less serious than public censure, suspension, or disbarment are "final" in the sense that they may not be appealed. However, the provision does not mean that those responding to charges have no right of review by this court, no matter what the Commission's order, so long as the Commission confines itself to action less serious than public censure, suspension, or disbarment. Obviously, the Commission—like this court—is not free to violate our rules, its own rules, or to disregard the Constitution, leaving a respondent with no avenue for redress and no means to be heard.

Hoover contends that the Commission's order is reviewable by the ordinary appeal route. *See* Rule 53(e). In the alternative, he argues that an interim order not reviewable under Rule 53(e) may be reviewed, amended, or vacated under Rule 55(i):

> For good cause shown and in the interest of justice any order or judgment may be entered, or may be amended or vacated by the officer or body that entered it or by a superior body.

 Assuming, without deciding, that the Commission's order is an interim order, not reviewable under Rule 53(e), we believe that this court's power and responsibility to oversee and administer disciplinary proceedings permits us to review interim orders pursuant to Rule 55(i). *See In re Riley,* 142 Ariz. 604, 607–08, 691 P.2d 695, 698–99 (1984). We will intervene in a pending disciplinary proceeding to correct error. *See In re Anonymous,* 128 Ariz. 238, 624 P.2d 1286 (1981). We therefore accept jurisdiction and grant review of the proceedings, particularly of the Commission's order of October 15, 1986, because we believe that these proceedings require intervention "in the interest of justice." Rule 55(i).

## PROPRIETY OF REMAND FOR DE NOVO HEARING

### A. *Procedural Background*

The Committee recommended that the disciplinary complaint filed against Hoover be amended to conform to the evidence, converting the complaint into a Rule 59 disability proceeding. Rule 59 allows this court or the Commission to transfer lawyers from active status to disability inactive status, in effect suspending them from the practice of law, if the lawyer suffers from physical or mental disability or incapacity. Rule 59(b) provides in relevant part as follows:

> 1. A lawyer whose physical or mental condition adversely affects his ability to practice law shall be investigated, and where warranted, shall be the subject of formal proceedings to determine whether the lawyer shall be transferred to disability inactive status. The matter shall proceed and hearings shall be conducted in the same manner and by the same rules as discipline proceedings, except that:
>
> A. Transfer to disability inactive status shall be imposed by order of the commission or of the court.
>
> B. A lawyer shall be transferred to such status upon proof that, as a result of mental or physical illness or infirmity ... the person lacks the capacity to discharge adequately his duty to his clients, the bar, the courts or the public.
>
> C. Principal aims of the proceeding shall be protection of the public and rehabilitation of the lawyer. Orders of transfer may include conditions of conduct in the nature of probation....

The Committee essentially concluded that Hoover had been disabled within the meaning of Rule 59 when he committed the wrongful acts, but concluded he was no longer disabled at the time of the hearing. Conclusions of Law Nos. 4 and 5. Accordingly, the Committee decided that discipline was "inappropriate" and that Hoover should be allowed to practice under specified conditions, including a three-year probation. During the recommended probation, Hoover would receive psychiatric consultation and his attending doctor would report periodically on his patient's condition and certify that Hoover was continuing to receive care and counseling.

When the State Bar substituted chief bar counsel for former bar counsel, the new counsel requested the Commission to vacate the Committee's report and either to remand the matter to a new committee or to make its own findings after reviewing the record. Chief bar counsel based her request on the Committee's alleged lack of authority to convert the matter from a disciplinary to a disability proceeding. In addition, counsel contended that the Committee's findings and conclusions were not supported by the evidence. The Commission vacated the Committee's report and transferred the case to a new committee for a de novo hearing. The Commission's order did not state the reason for the transfer, for hearing de novo, nor why further testimony was necessary.

## B. *Due Process*

■ Hoover contends that the Commission's actions violated his right to due process. U.S. Const.Amend. XIV. Bar disciplinary proceedings are "not for punishment but rather ... a catharsis for the profession and a prophylactic for the public." *Riley,* 142 Ariz. at 608, 691 P.2d at 699 (quoting *Bar Association v. Cockrell,* 274 Md. 279, 286, 334 A.2d 85, 88 (1975)). Nevertheless, because the proceedings are adversary and of a quasi-criminal nature, respondent is entitled to procedural due process. *In re Ruffalo,* 390 U.S. 544, 551, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117 (1968).

■ A duly-constituted administrative committee fulfilled its charge of hearing the evidence and filed a report of its findings, conclusions, and recommendations, together with a record of its proceeding and a hearing transcript. Rule 53(c)(2), (4), and (6). The Commission then had "the same scope of *review* as is exercised by this court." Rule 47(g)(1) (emphasis added). In reviewing a committee's report, the Commission is to:

> affirm, reverse or modify the findings of fact, conclusions of law or recommendation before it, remand the matter for further proceedings before *the* committee, or dismiss the charge and complaint. A copy of the commission report and any

order shall be served upon the hearing committee from which referred (sic) ... Rule 53(d)(2) (emphasis added). The Commission took none of the authorized actions, instead remanding the matter to a new committee for a hearing de novo, canceling all that had been done. Such a procedure not only is unauthorized by the rules, but is not permitted by the concept of due process.

A lawyer undergoing a Bar disciplinary proceeding is faced with financial and emotional tribulation, including the possibility of discipline which may eliminate his or her economic support. Although we describe disciplinary proceedings as nonpunitive, we realize that they are anything but from a respondent's standpoint. Surely traditional notions of fair play are offended by permitting the administrative tribunal having ultimate jurisdiction to require, without any apparent good cause, *cf.* Rule 48(c), that the matter be tried and retried. The Commission and this court give great weight to the factual findings of a committee, particularly when questions of credibility are involved. *In re Zang and Whitmer,* 154 Ariz. 134, 741 P.2d 267 (Ariz.1987). The committees have an independent, factfinding, credibility-weighing function which should be given deference. As we view the concept of due process, neither the Commission nor this court may transfer a case to a new committee because of unhappiness with the factual findings of a particular committee.

If the Commission disagrees with the Committee's findings, it has the authority to "reverse or modify the findings of fact, conclusions of law or recommendation." Rule 53(d)(2). This, of course, will facilitate review by this court. If the Commission believes that the Committee failed to receive all relevant evidence or overlooked an issue, thus failing to evaluate it, the Commission may "remand the matter for further proceedings before *the* committee." *Id.* (emphasis added). Also, as a finder of ultimate fact, the Commission presumably could require witnesses to be subpoenaed and brought before it. Neither this court nor the Commission, however, may expose

a respondent to multiple hearings de novo until, finally, some committee is found that will make "acceptable" findings, conclusions, and recommendations.

We hold, therefore, that the Commission's October 15, 1986 order transferring the case to a new committee violated both the scope of its powers and Hoover's right to procedural due process. We reach the same conclusion with respect to the Commission's order for a de novo hearing, whether before a new committee or the "old" Committee. Of course, the Commission may remand the matter "for further proceedings" to the committee which referred it so long as the Commission has some good reason and purpose for the remand. We do not limit the Commission's authority. There are many potential reasons for remand; if the Commission's order has support in the record and its *stated* purposes for remand are reasonable, we will support its actions. We cannot, however, simply allow the Commission, without explanation, to transfer cases to new hearing committees or to remand for a de novo hearing.[7]

### FASHIONING A REMEDY

■ Bar counsel argued that the Commission's order was necessary because the Committee had exceeded its authority in "converting" a disciplinary proceeding into a disability proceeding, and then recommending reinstatement without any compliance with Rules 72 and 73. We agree with bar counsel that this is the effect of the Committee's recommendations. We do not agree, however, that the Committee exceeded its jurisdiction in following this procedure. Neither the Committee, the Commission, nor this court should lose sight of the objectives of the disciplinary rules. Those objectives are to protect the public from further acts by respondent, to deter others from similar conduct, and to provide the public with a basis for continued confidence in the Bar and the judicial system. *Riley*, 142 Ariz. at 608, 691 P.2d at 699; *In*

*re Blankenburg*, 143 Ariz. 365, 367, 694 P.2d 195, 197 (1984). The disability rules are intended to prevent harm to clients and to other members of the public. After the other objectives have been satisfied, the system is intended to assist and rehabilitate the errant or disabled lawyer. Rule 59(b)(1)(C).

The court's power to achieve these objectives is constitutional. *See* Ariz. Const. art. 6, § 5(5) (authority for integrated Bar. *See* Rules 31 to 41, Ariz.R.S.Ct., 17A A.R.S.). That power should be construed flexibly, rather than in the rigid form of criminal proceedings, to best attain the objectives of the disciplinary rules. *See, e.g., In re Beckmann*, 79 N.J. 402, 400 A.2d 792 (1979) (court has power to "fashion" result in disciplinary proceedings even without "the blessing of precedent"). For this reason, the Committee did not exceed its authority when it combined disciplinary and disability procedures.

■ Although the Committee found Hoover sufficiently recovered to practice law, it also recommended continued treatment and monitoring. Neither Hoover nor his doctors claimed that his manic depressive disorder miraculously disappeared. He is suffering from a condition that may reappear at any time and "adversely affect[ ] his ability to practice law." Rule 59(b)(1). Given Hoover's recent history, proceedings could have been commenced under Rule 59 in addition to or in substitution of Rule 53 disciplinary proceedings. Thus, as long as a respondent is given adequate notice and an opportunity to be heard, we see no reason why the Committee, the Commission, or this court cannot combine disciplinary and disability proceedings in appropriate cases. In addition, having recommended orders under Rule 59, there is no reason why the Committee also could not make recommendations under Rule 73, which covers reinstatement after suspension under Rule 59. The Committee did not recommend any act or order which was beyond the Commission's power to recom-

---

7. Of course, the board's or commission's power to transfer a case *before* hearing is more exten-

sive. *See* Rule 48(c).

mend to this court, nor could it bind the Commission to accept any finding, conclusion, or recommendation. Therefore, the Committee did not exceed its authority nor violate any procedural rule.

## SUFFICIENCY OF THE EVIDENCE

The Bar argues that the evidence before the Committee did not support a finding that Hoover was *M'Naghten* insane, or that he had recovered sufficiently to practice law. The Bar either does not agree with the Committee's interpretation of the doctors' testimony, or finds the doctors' testimony incredible. Because of the procedural posture in which we received this case, we have not reviewed the evidence in detail and have not attempted to evaluate it. Accordingly, nothing in this opinion implies any view as to the sufficiency of the evidence. We believe that the proper procedure is to remand this case to the Commission in accordance with the requirements of Rule 53(d)(2). If respondent or bar counsel appeals the Commission's final decision and report, the matter will then be ripe for review and decision by this court.

## M'NAGHTEN APPLICATION TO DISCIPLINARY PROCEEDINGS

It seems obvious that part of the Commission's dissatisfaction with the Committee was its feeling that the Committee may have erroneously, but not explicitly, concluded that insanity which met the *M'Naghten* standard was a complete bar to disciplinary proceedings. Hoover argues that an attorney whose conduct was a result of a mental disease or illness which rendered him unable to differentiate between right and wrong or to appreciate the nature and quality of his acts cannot be disciplined. Hoover's argument is based on language in *In re Couser*, 122 Ariz. 500, 596 P.2d 26 (1979). Neither the Commission nor present bar counsel agrees with Hoover's reading of *Couser;* therefore, the Commission directed the new committee to address the issue. We believe that it would better serve the interests of justice if we resolve the issue before the proceedings go any further.

*Couser* held that a mental illness not meeting the *M'Naghten* test of insanity was not a defense to charges of misconduct, though it "should be a factor to be considered in determining an appropriate discipline." *Id.* at 501, 596 P.2d at 27. In reaching this conclusion, we stated:

> It is not appropriate to hold the general public to one standard of conduct and then to condone a less stringent standard for determining if a lawyer's mental problems excuse his wrongful acts. Therefore, *unless an attorney is found to have been insane under the M'Naghten test,* his mental disorders will not operate as a bar to disciplinary actions.

*Id.* at 502, 596 P.2d at 28 (emphasis added). On the same date that *Couser* was handed down, we decided *In re Stout,* 122 Ariz. 503, 596 P.2d 29 (1979). *Stout* held that this court's primary obligation in administering bar discipline is protecting the public rather than analyzing the reasons for the lawyer's delinquency. " 'Our primary concern must be the fulfillment of proper professional standards, whatever the unfortunate cause, emotional or otherwise, for the attorney's failure to do so.' " *Stout,* 122 Ariz. at 504, 596 P.2d at 30 (quoting *Grove v. State Bar of California,* 66 Cal.2d 680, 685, 58 Cal.Rptr. 564, 567, 427 P.2d 164, 167 (1967)). An attorney cannot escape bar discipline

> by urging his misconduct was the result of a mental condition. Not only does [discipline] operate as a deterrent ... but since the practice of law is a self-regulating profession, we deem it appropriate that the public be advised that the profession is acting to protect it from miscreants.

*Id.*

■ We hold today that *Stout* sets forth the correct principles applicable to lawyer misconduct, whatever the nature and severity of the mental illness that produced the misconduct. The language quoted from *Couser* was unfortunate. In our view, bar discipline is not foreclosed merely because the ethical impropriety was the product of a mental illness. On the other hand, although insanity does not foreclose disci-

pline, it must be considered in determining whether and what kind of discipline is to be imposed and what procedures are to be followed to protect the public. *Couser, supra; accord In re Minninberg*, 485 A.2d 149, 151 n. 23 (D.C.App.1984); *Cincinnati Bar Association v. Fettner*, 8 Ohio St.3d 17, 455 N.E.2d 1288 (1983). *See generally* Annot., 26 A.L.R.4th 995 (1983).

We reach this conclusion for two interrelated reasons. First, the *M'Naghten* standard is not a medical diagnosis, but a legal fiction developed for courtroom use by judge and jury as a test for the intent necessary to hold a defendant criminally responsible for his or her acts. W. La-FAVE & A. SCOTT, JR., CRIMINAL LAW, 280–81 (1972). Its use today, almost 150 years after *M'Naghten's Case* was decided, has been severely and aptly criticized. *Id.;* Goldstein & Katz, *Abolish the "Insanity Defense"—Why Not?*, 72 YALE L.J. 853 (1963). We see no need to engraft such a test onto bar discipline proceedings which are not intended to punish. *Stout, supra; accord Committee on Professional Ethics v. Silver*, 395 N.W.2d 877, 879 (Iowa 1986).

## CONCLUSION

This court has jurisdiction to review the Commission's order to ensure compliance with rules and procedural due process. The Commission's order in this case violated respondent's due process rights because the Commission had no authority to transfer a matter from one hearing committee to another after the first committee had heard the case and rendered its findings, conclusions of law, and recommendations. Once a hearing committee's work is finished, Rule 53 and procedural due process limit the Commission to affirming, reversing, modifying, or dismissing the charges, or remanding for further specified proceedings before the same committee.

We also hold that the Committee did not exceed its authority in converting the case from a disciplinary to a disability proceeding. The difference between the two types of proceedings is in the type of remedy chosen; the denomination on the file is not dispositive. A committee may recommend that a lawyer guilty of ethical misconduct may be disciplined or put on disability status, or both. The committee's recommendations should be aimed at protecting the public from further damage at the hands of the respondent, deterring others from similar conduct, assuring confidence in the Bar and judicial system, and, finally, assisting and rehabilitating the attorney. The Commission and the court should be guided by these same principles.

The insanity of a respondent does not foreclose bar discipline, regardless whether the insanity meets the *M'Naghten* test. The existence of any mental illness that contributed to the ethical misconduct must be considered in determining the remedy.

 As can be seen, there may be much to be done before final disposition of respondent's case. We are concerned that while this case is pending, respondent is practicing law without the restraints, conditions, and protections recommended by the Committee. We fear that Hoover "may be incapacitated to the extent" that he might cause "harm to the public, the legal profession or the administration of justice." Rule 59(c). On the present record, it appears at the least that Hoover should not be practicing without any safeguards. Therefore, we order that until this case is complete, Hoover must comply with the following conditions recommended by the Committee:

1. Respondent shall continue regular consultation with a psychiatrist or a psychologist.

2. Respondent's attending psychiatrist or psychologist shall file a report of respondent's condition with chief bar counsel no less than every ninety days, together with a statement that respondent continues to receive regular care and consultation.

3. If respondent suffers a recurrence of his disability, or fails to continue regular consultation as ordered, the Commission immediately may determine whether respondent should be placed on disability inactive status.

If Hoover fails to comply with these conditions, chief bar counsel also should report

the fact and nature of the noncompliance to this court.

The Commission's order of October 15, 1986 is vacated. The case is remanded to the Commission for further proceedings consistent with this opinion.

GORDON, C.J., HOLOHAN, J., and SHELLEY, Judge, concur.

Justice CAMERON, J., recused himself and did not participate in the determination of this matter. Pursuant to Ariz. Const.art. 6, § 3, Judge Melvyn T. Shelley of the Court of Appeals, Division One, was designated to sit in his stead.

MOELLER, J., did not participate in the determination of this matter.