861 P.2d 619

**In the Matter of a Member of the State Bar of Arizona William Joseph REDONDO, Respondent.**

**No. SB–92–0055–D.**
Disc. Comm. Nos. 88–1627, 89–0387, 89–0399, 89–0825, 89–1021, 89–1382, 89–1769, 89–2063, and 90–1359.

Supreme Court of Arizona, En Banc.

Oct. 21, 1993.

Slutes, Sakrison, Even, Grant & Pelander by Tom Slutes, Tucson, and Gust Rosenfeld by Peter Collins, Jr., Phoenix, for William Joseph Redondo.

State Bar of Arizona by Yigael M. Cohen and Nancy A. Greenlee, Phoenix, for State Bar.

## OPINION

MARTONE, Justice.

This is an appeal by William Redondo from the report of the Disciplinary Commission recommending that he be disbarred. He concedes the propriety of suspension. The only real issue before us is the sanction to be imposed.

### I. BACKGROUND

The State Bar charged Redondo with 12 counts of unethical conduct arising from his representation of a number of clients. Since the conduct occurred both before and after February 1, 1985, some of the counts relate to the disciplinary rules of the former Code of Professional Responsibility, while others relate to the ethical rules of the current Rules of Professional Conduct. A Hearing Committee heard testimony for six days and issued its final report on March 2, 1992. The Committee recommended suspension for one year and other sanctions not here relevant.

For the most part, the Disciplinary Commission agreed with the findings of the Hearing Committee. The Commission, however, concluded that disbarment rather than suspension was the appropriate sanction. We entered an order of interim suspension on November 13, 1992.

### II. FACTS

Although we act as an independent trier of fact and law in disciplinary proceedings, our review of the record suggests that this case does not turn on any question of fact. The differences between the Hearing Committee's findings and the Disciplinary Commission's findings do not affect the question of the propriety of sanctions. This case turns on the applicable standards, and conclusions to be drawn from the application of those standards to the facts. We, thus, summarize the facts as found by the Disciplinary Commission.

1. In 1985, Redondo received a $5,000 draft payable to a client for medical expenses. He deposited it into an account used for both his law practice and client trust matters. He paid the client $500 and kept the $4,500 balance. He did not pay the client the $4,500 balance until about four years later.

Redondo also borrowed $10,000 from his client without giving him advice or the opportunity to seek the advice of independent counsel. He ultimately paid the loan.

We agree with the Disciplinary Commission that Redondo violated Arizona Rules of Professional Conduct ER 1.15(a) and (b) by failing to hold the property of his client separate from his own, by failing to keep records and an accounting, by failing to notify the client upon receipt of the property, and by failing to promptly pay the funds due the client. We also agree with the Commission that Redondo violated ER 1.8 when he entered into a business transaction with the client without providing the client an opportunity to seek the advice of independent counsel and without obtaining his written consent.

2. In 1988, Redondo was retained by clients to resolve a dispute with the state over a domestic relations matter. He told

the clients that he would be able to achieve their objectives but then failed to take any steps on their behalf. He failed to respond to his client's attempt to contact him. Even after he was fired, he failed to respond to State Bar inquiries regarding the matter.

We agree with the Commission that Redondo failed to perform matters entrusted to him in violation of ER 1.3, failed to adequately communicate with his clients in violation of ER 1.4, and failed to cooperate with the State Bar in violation of ER 8.1(b), and Rule 51(h), Ariz.R.Sup.Ct.

3. In 1989, Redondo was retained by a client to represent her in a personal injury action. When the client had questions about his handling of the matter, he refused to return her calls. Even after the bar complaint was filed, he failed to respond to State Bar inquiries regarding the matter.

We agree with the Commission that Redondo violated ER 1.4(a) by failing to communicate with his client and that he violated ER 8.1(b) and Rule 51(h) by failing to cooperate with the State Bar's disciplinary investigation.

4. In 1982, Redondo's brother was the representative for the estate of their aunt. He hired Redondo to represent the estate. Redondo received payments on behalf of the estate which he deposited into his personal or general office accounts. These funds were not maintained separately as property of the estate.

Redondo did not always separate his role as a lawyer from his role as a relative and estate heir. He failed to provide accountings to the estate and did not advise the personal representatives to advise all the heirs of ongoing distributions of monies from the estate. Redondo did not answer letters from the State Bar regarding this matter.

We agree with the Commission that Redondo accepted payments on behalf of the estate which were not kept separate from his own property and that he failed to keep complete records or provide an accurate and timely accounting, in violation of ER 1.15(a) and DR 9–102, former Rule 29(a), Ariz.R.Sup.Ct. (1984). We also agree with the Commission that Redondo violated ER 1.4 by failing to properly advise and communicate with the client. And, we agree with the Commission that Redondo's failure to cooperate with the State Bar violated ER 8.1(b), Rule 51(h), and DR 6–101(A)(3) of former Rule 29(a), Ariz.R.Sup. Ct. (1984).

5. In 1989, Redondo refused to respond to letters from the State Bar regarding a complaint that he abused a witness. We agree with the Commission that, although the underlying complaint was not well-founded, Redondo violated ER 8.1(b) and Rule 51(h) by failing to cooperate with the State Bar regarding the matter.

6. In 1985, a client consulted Redondo about a claim that had been dismissed in both state and federal court. The client left Redondo with a box of documents. Redondo lost the documents, but found them five years later and returned them to the client. The client's legal rights were not prejudiced by the loss because, as Redondo told him at the outset, the statute of limitations expired on his claims before he came to see him. Nevertheless, we agree with the Commission that Redondo violated ER 1.15 when he failed to properly safeguard a client's property, and that he violated ER 8.1(b) and Rule 51(h), by failing to cooperate with the State Bar.

7. In 1986, Redondo was retained by a client in connection with her divorce and her business relationship with her husband. The client told Redondo that she needed cash and asked him to buy her wedding rings. Redondo sent her to several pawn shops and jewelry stores, but the client did not like the price they offered her. She went back to Redondo, who bought her rings for $500.

We agree with the Commission that Redondo violated ER 1.8(a) by entering into a business transaction involving the sale of the client's rings without providing the client with opportunity and notice that she should seek independent legal counsel. In addition, he did not obtain her written con-

sent to proceed with the transaction without such advice. We also agree with the Commission that Redondo failed to cooperate with the State Bar, in violation of ER 8.1(b) and Rule 51(h).

8. Between 1983 and 1988, Redondo used his client trust account for the payment of both personal and business accounts including payment of loans to his office account and loans to others.

We agree with the Commission that Redondo's handling of his trust account violated former Rule 29(f), Ariz.R.Sup.Ct. (1984) and current Rule 43(a), Ariz.R.Sup. Ct.

9. In 1983, Redondo was retained by a client to represent her in an automobile accident. Although he filed an action on her behalf, he allowed the matter to be dismissed for lack of prosecution. His communication with his client was sporadic.

We agree with the Commission that Redondo violated ER 1.4 by failing to keep his client reasonably informed about the status of the matter.

## III. *DISCUSSION*

The Committee recommended suspension. The Commission recommended disbarment. Redondo argues that suspension rather than disbarment is appropriate because neither the Committee nor the Commission found that he intended to violate any of the ethical rules. He also argues that the Commission gave insufficient weight to evidence he offered that he suffers from major depression and disabling migraine headaches.

The State Bar argues that, although his conduct was found to be unintentional, the Commission made its recommendation upon its finding that Redondo's level of carelessness was so great as to make him "a hazard to the profession." The State Bar also argues that two prior informal reprimands failed to have any positive effect on Redondo and that Redondo failed to offer sufficient evidence of his disability or impairment to justify any finding of mitigation by the Commission.

As a starting place, we use the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) which sets forth a framework within which to consider the propriety of sanctions. Because it is plain that, at a minimum, suspension is warranted, we go directly to the most significant findings of the Commission. These involve Redondo's handling of his trust accounts and his client's property. Under ABA Standard 4.11, disbarment is generally appropriate when a lawyer knowingly converts client property. In contrast, under Standard 4.12, suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury. As the commentary to Standard 4.12 states, "[s]uspension should be reserved for lawyers who engage in misconduct that does not amount to misappropriation or conversion. The most common cases involve lawyers who commingle client funds with their own, or fail to remit client funds promptly." ABA Standard 4.12 cmt.

Neither the Committee nor the Commission found that Redondo actually converted client property. Instead, they both found that Redondo knew or should have known that he was dealing improperly with his trust account and that this created the potential for injury to his client. In addition, there was no evidence that any of the clients were injured in fact by Redondo's commingling. Therefore, it appears that absent aggravating circumstances, suspension is appropriate under Standard 4.12, and disbarment is not appropriate under Standard 4.11.

We next turn to Redondo's failure to avoid conflicts of interest with his clients, including loans, and the purchase of a client's rings. The applicable ABA Standard is 4.32, which states that suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict and causes injury or potential injury to the client.

With respect to Redondo's lack of diligence, Standard 4.42 states that suspension

is generally appropriate when a lawyer knowingly fails to perform services for a client and causes injury or potential injury to the client.

We, thus, agree with Redondo that at least with respect to the framework set forth in the ABA Standards, his conduct warrants suspension and not disbarment.

We then turn to aggravating and mitigating factors. We consider aggravating factors first. The Bar argues that Redondo had been twice reprimanded. Unfortunately, the Bar has not given us a time line on when these occurred. But even if we assume that they occurred before some or all of the behavior which is the subject of the pending proceeding, under ABA Standard 8.2, suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to the client, the public, the legal system, or the profession. In other words, a graded response from reprimand, to suspension, to disbarment is sometimes appropriate, depending on the severity of the subsequent conduct. And while there are other aggravating factors in this case, none of them rise to the level of tipping the balance in favor of disbarment rather than suspension.

We turn next to mitigating factors. We agree with the State Bar that the evidence of Redondo's depression and migraine headaches was insufficiently weighty to require the Commission to accord it much significance. The Committee gave it little weight, and the Commission none. We agree with the Commission that there was insufficient evidence to suggest that this factor was a mitigating circumstance.

We return to the major issue before us and to the Committee's and Commission's treatment of it. The Committee agreed that ABA Standard 4.12 regarding suspension, and not Standard 4.11 regarding disbarment, was appropriate. The Committee saw the witnesses. We did not. And, although the Commission recommended disbarment, it made the following finding:

The Commission does not believe Respondent intentionally mishandled or neglected any of his cases; rather, it believes his misconduct was a result of sloppy handling of his clients' cases. However, the Commission believes Respondent's level of carelessness is so great as to make him a hazard to the profession. Commission Report at 19.

It also appears that the Commission recommended disbarment because it was of the view that Redondo had been twice previously reprimanded and did not correct his attitude. But as we have noted, under the ABA Standards, it is often appropriate to move from reprimand to suspension, not from reprimand to disbarment, depending, of course, on the severity of the subsequent conduct. And while we agree with the Commission that the multiple counts of this complaint reflect a pattern of misconduct, the pattern suggests wholesale negligence rather than malice.

On the other hand, we do not mean to minimize Redondo's conduct. It was awful. The only real question before us is suspension or disbarment. We think that the spirit of the ABA Standards is better met by gradual and graded sanctions. If we thought the public could only be protected by disbarment, we would do so promptly. But we can protect the public just as well by a carefully crafted disposition which includes a lengthy term of suspension followed by a lengthy term of *supervised* probation. This will clearly protect the public from Redondo and at the same time give him an opportunity to cure his significant problems before he is ever allowed to practice on an unsupervised basis again.

## IV. *DISPOSITION*

Redondo is suspended for a period of two years, from and after the order of interim suspension dated November 13, 1992. Reinstatement after suspension is governed by Rule 71, Ariz.R.Sup.Ct. If and upon reinstatement, Redondo shall be placed on supervised probation for a period of two years, subject to the following terms and conditions:

1. Redondo shall keep his books of account, ledgers, trust account, books and files open for inspection by the State Bar of Arizona.

2. Under the direction of the State Bar, Redondo shall take and complete a course of instruction in the Rules of Professional Conduct and pass an examination on the subject given by the State Bar.

3. Redondo shall continue regular consultation and treatment with a psychiatrist or psychologist regarding his claim of depression. His psychiatrist or psychologist shall file a report of his condition with Chief Bar Counsel not less than every 90 days during the term of the probation.

4. Redondo shall have a mentor appointed by the State Bar of Arizona who shall monitor his practice and serve as a resource for problems. The expense of such a mentor shall be borne by Redondo. The mentor shall also report to the State Bar on a quarterly basis on the status of Redondo's law practice, his compliance with the Rules of Professional Conduct and his compliance with these terms of probation.

Redondo is assessed the costs and expenses of these disciplinary proceedings in the amount of $18,156.30 pursuant to Rule 52(a)(8), Ariz.R.Sup.Ct.

MOELLER, V.C.J., concurs.

CORCORAN, Justice, dissenting:

I respectfully dissent. For a number of reasons, I agree with the Disciplinary Commission that respondent should be disbarred.

The majority considered each of respondent's ethical violations in isolation and relied heavily on the fact that, under the American Bar Association's *Standards for Imposing Lawyer Sanctions,* each *type* of ethical violation committed by respondent warrants suspension rather than disbarment. I think that this approach is misguided.

By considering each *type* of ethical violation in isolation, the majority overlooks the severity of respondent's ethical violations, which becomes distinctly apparent when his misconduct is viewed as a whole. Over

a 7–year period, respondent engaged in a continuous pattern of misconduct that affected 10 different clients and resulted in the violation of no fewer than 6 separate ethical rules, a number of which respondent violated on more than one occasion.

The *Standards* set forth a specific framework for considering respondent's misconduct as a whole. The majority is correct in noting that the *Standards* provide that each type of ethical violation, standing alone, calls only for suspension. Each recommended sanction, however, is qualified by the phrase "[a]bsent aggravating or mitigating circumstances." And, one of the aggravating circumstances provided for in the *Standards* is "multiple offenses." *See* Standard 9.22(d). Not only does the majority fail to consider respondent's multiple offenses, but also it gives inadequate weight to the other numerous aggravating circumstances present in this case—namely, respondent's two prior informal reprimands, pattern of misconduct, and bad faith obstruction of the disciplinary process. *See* Standards 9.22(a), (c) and (e). Indeed, failure to cooperate with disciplinary authorities in itself is a *"significant* aggravating factor." *In re Pappas,* 159 Ariz. 516, 527, 768 P.2d 1161, 1172 (1988) (emphasis added). In light of respondent's numerous and varied ethical violations, I cannot agree with the majority that "none of [the aggravating circumstances] rise to the level of tipping the balance in favor of disbarment rather than suspension."

Moreover, according to the *Standards,* when disciplinary cases involve multiple charges of misconduct, the ultimate sanction imposed "generally should be *greater than* the sanction for the most serious misconduct." *Standards,* Theoretical Framework, at 6 (emphasis added). The majority presumably contemplated this guideline when it acknowledged that, at a *minimum,* suspension is warranted in this case. Nonetheless, upon concluding that respondent's misconduct calls for suspension rather than disbarment, the majority finds that "it is often appropriate to move from reprimand to suspension, not from reprimand to disbarment, depending, of course, on the severity of the subsequent conduct." Although I agree that this statement correct-

**340**

ly reflects a principle that generally applies in disciplinary cases, I find that this case is one in which gradual and graded sanctions are both ineffective and inappropriate.

This court has reiterated in many prior disciplinary cases that the objectives of the disciplinary rules are to protect the public from further acts by respondent, to deter others from similar misconduct, and to provide the public with a basis for continued confidence in the Bar and the judicial system. *See, e.g., In re Hoover,* 155 Ariz. 192, 197, 745 P.2d 939, 944 (1987). Requiring gradual and graded sanctions effectively allows respondent to benefit from his wholesale disregard for the disciplinary process. Such an approach cannot promote the goal of deterring others from engaging in similar misconduct. Granted, the failure of the disciplinary process to put a prompt end to respondent's misconduct is an unfortunate fact in this case. And, although the majority reasonably could treat this delay as a mitigating circumstance, I do not think that prior case law compels the lock-step approach to imposing sanctions that is adopted in this case. *See, e.g., In re Mulhall,* 170 Ariz. 152, 822 P.2d 947 (1992); *In re Engan,* 170 Ariz. 409, 825 P.2d 468 (1992); *In re Gaynes,* 168 Ariz. 574, 816 P.2d 231 (1991).

For too many years, respondent has been an irresponsible, unguided missile. As a result, he has injured at least 10 different clients, all of whom are members of the public. Considering the number and variety of ethical violations committed by respondent, along with the Disciplinary Commission's determination that his "level of carelessness is so great as to make him a hazard to the profession," I find that the only appropriate sanction in this case is disbarment. By affording respondent the opportunity to practice law in the future, this court does a disservice both to the public and to the legal profession.

FELDMAN, C.J., and ZLAKET, J., recused themselves and did not participate in the determination of this matter.