778 P.2d 241

**In the Matter of Philip W. MARQUARDT, Judge of the Superior Court, Maricopa County, Respondent.**

**No. JQ–88–0002.**

Supreme Court of Arizona,
En Banc.

July 25, 1989.

Lewis and Roca by John P. Frank and Janet A. Napolitano, Phoenix, for respondent.

Rubin, Croxen & Myers by Edith A. Croxen, Former Director of Commission on Judicial Qualifications, Tucson, and Hon. Noel A. Fidel, Chairman of Commission on Judicial Conduct, Phoenix, and E. Keith Stott, Jr., Director of Commission on Judicial Conduct, Tempe.

FELDMAN, Vice Chief Justice.

In this judicial misconduct case, we review the report of the Commission on Judicial Qualifications (Commission). *See generally* Rule 15, Rules of Procedure for the Commission on Judicial Qualifications, 17B A.R.S. (1988). We have jurisdiction under Ariz. Const. art. 6.1, §§ 2, 3, and 4.

By constitutional amendment adopted at the 1988 general election, the Commission is now known as the Commission on Judicial Conduct. *Id.*, § 1. At all times during the Commission's existence, its general purpose was to investigate, hold hearings, make findings, and recommend to this court the disposition of judicial disciplinary cases. *See In re Haddad,* 128 Ariz. 490, 491–92, 627 P.2d 221, 222–23 (1981). In these proceedings, we make an independent review of the record and are the final judges of fact and law. *In re Ackel,* 155 Ariz. 34, 42, 745 P.2d 92, 100 (1987); *In re Biggins,* 153 Ariz. 439, 440, 737 P.2d 1077,

1078 (1987); *Haddad,* 128 Ariz. at 491, 627 P.2d at 222.

### FACTS

The relevant facts are briefly stated. Respondent, Philip W. Marquardt, has served with distinction as a judge of the Arizona Superior Court, Maricopa County, for approximately eighteen years. The voters retained Judge Marquardt at each retention election he has faced, the latest being November 1988.[1] Respondent has no previous disciplinary record as either a lawyer or member of the bench. He served as a colonel in the United States Air Force Reserve for some years.

In the summer of 1988, while returning from a vacation in Mexico, respondent was searched at the port of entry in Houston, Texas, and found in possession of less than nine-tenths of a gram of marijuana. The crime is a misdemeanor under Texas law. *See* Tex.Rev.Civ.Stat.Ann. art. 4476–15, § 4.051(b)(1) (Vernon 1989). Consequently, respondent was charged with misdemeanor possession. At his bench trial, he testified that a stranger gave him the marijuana. It was, he said, wrapped in a small piece of plastic that he stuck in his watch pocket. Forgetting about it, respondent came across the border and was apprehended. He describes the incident as a "mistake" because he "should have known it was there." The judge in Harris County, Texas, evidently disagreed because he found respondent guilty of the offense charged. The conviction is now final.

Respondent informed the Commission of the accusation and conviction of misdemeanor possession of marijuana. The Commission commenced proceedings, charging respondent with conduct subject to discipline under article 6.1 of the Arizona Constitution. After a hearing, a preliminary review by this court, and a remand for further proceedings before the Commis-

---

1. Arizona follows a modified "Missouri Plan" system whereby most superior court judges, once appointed, do not run for election but, instead, appear on the ballot for retention or disapproval by the voters every four years. *See* Ariz. Const. art. 6, §§ 12, 37–38, 40.

sion, the matter is before us again for review and determination.[2]

## CONSTITUTIONAL PROVISIONS

Three sections of article 6.1 are relevant to the issues in this case. The first provides for disqualification "from acting as a judge ... while there is pending an indictment or an information charging [the judge] in the United States with a crime punishable as a felony under Arizona or federal law...." Ariz. Const. art. 6.1, § 2. After the Texas authorities charged respondent, the presiding judge of the Maricopa County Superior Court removed him from his judicial duties, reassigning him to administrative work. Respondent has been effectively "disqualified" ever since.

The constitution further provides that this court "*may* suspend a judge from office without salary when, in the United States, he ... is found guilty of a crime punishable as a felony under Arizona or federal law or of any other crime that involves moral turpitude under such law." *Id.*, § 3 (emphasis added). The section directs that "*if*" a judge is so suspended, this court "*shall* remove him from office" when his conviction becomes final. *Id.* (emphasis added). Respondent argues that because the constitution uses the terms "may" and "if," suspension after conviction is discretionary with the court. He contends further that because the crime in question could have been punished in Arizona as either a felony or a misdemeanor, it is not one "punishable as a felony under Arizona ... law" within the meaning of section 3 so that suspension is not permitted in any event.

The third relevant constitutional provisions is art. 6.1, § 4. A constitutional amendment adopted at the 1988 general election substantially changed the article's original version. The amendment became effective after respondent was tried and convicted in the Texas court, but before the conviction became final. The provision as

amended reads as follows, with the words added by the amendment emphasized:

> [T]he Supreme Court may ... censure, *suspend without pay* or remove a judge for action by him that constitutes ... conduct prejudicial to the administration of justice that brings the judicial office into disrepute.

## ISSUES

The constitutional provisions, applied to the facts just discussed, present us with three ultimate questions:

1. Was respondent convicted "of a crime punishable as a felony" under Arizona law?

2. If so, is he automatically removed from office when the conviction becomes final or is removal discretionary with this court?

3. If respondent was not automatically removed under the provisions of sections 2 and 3 after his conviction became final, what action can and should this court take?

## DISCUSSION

A. Was the crime one "punishable as a felony" under Arizona law?

Unfortunately, this issue is not clear-cut. Arizona law criminalizes the knowing possession of marijuana. *See* A.R.S. § 13–3405(A)(1). Subsection (B)(1) classifies the offense as a class 6 felony. However, the sentencing statute, which is part of the same title of the code, provides in part:

> Notwithstanding any other provision of this title, if a person is convicted of any class 6 felony ... and if the court ... is of the opinion that it would be unduly harsh to sentence the defendant for a felony, the court may enter judgment of conviction for a class 1 misdemeanor and make disposition accordingly....

A.R.S. § 13–702(H). The statute further provides that

---

**2.** Technically, the precise question before us is whether respondent should be suspended without pay under art. 6.1, § 3. However, because his conviction became final during the penden-

cy of these proceedings, we believe it appropriate to consider permanent disposition of the case. *See* Ariz. Const. art. 6.1, § 3.

[w]hen a crime or public offense is punishable in the discretion of the court by a sentence as a class 6 felony or a class 1 misdemeanor, the offense shall be deemed a misdemeanor if the prosecuting attorney:

1. Files an information in superior court designating the offense as a misdemeanor;

2. Files a complaint in justice court or magistrate court designating the offense as a misdemeanor.

*Id.* Thus, the statutes permit the offense to be either charged as a felony and subsequently treated as a misdemeanor or, at the prosecutor's discretion, initially charged as a misdemeanor rather than a felony.

At the Commission hearing, the Maricopa County Attorney testified that under its written procedures his office would not have treated respondent's conduct as a felony. The county attorney also testified that a defendant such as respondent would usually be charged with a felony but referred to an adult diversion program rather than being prosecuted to final conviction. Respondent argues this testimony compels a finding that the crime was not "punishable as a felony." We disagree.

We do not believe the definition of what is "punishable as a felony" may vary with the policies and procedures adopted or discarded from time to time by the particular county attorney having jurisdiction over the offense and offender. In our view, the words "punishable as a felony" refer to the maximum punishment that might be imposed for the conduct involved and not to the usual routine of prosecutorial discretion on how or whether to charge at all. *State v. Mileham,* 1 Ariz.App. 67, 69, 399 P.2d 688, 690 (1965) ("punishable" is defined as "the statutory maximum which could be imposed for the *offense which was charged*") (emphasis added); *cf.* 1962 Ariz. Sess.Laws (1961 1st Spec.Sess.) ch. 1, § 1 (amending A.R.S. § 36–1001(33) to define

"punishable as a felony" to include imprisonment in the state prison "as either an alternative or the sole penalty") (repealed by 1979 Ariz.Sess.Laws ch. 103, § 14).

■ As the Commission argues, other courts have consistently held the maximum penalty that could be imposed for the conduct involved determines the class of crime. *See Dickerson v. New Banner Institute, Inc.,* 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983); *United States v. Tallmadge,* 829 F.2d 767 (9th Cir.1987) (the cited cases illustrate that where the predicate conviction is for a crime punishable by more than a year in prison, it is considered a felony conviction even though the specific defendant was not sentenced to prison but instead was given probation and his conviction later expunged or reduced under state procedures); *see also United States v. Pruner,* 606 F.2d 871 (9th Cir.1979). Thus, we agree with the Commission's view: the maximum punishment imposable under Arizona law for the conduct involved, and not speculation as to how the case otherwise might have been handled, determines whether the crime charged was one "punishable as a felony"[3] within the meaning of art. 6.1, § 3.[4]

■ The fact respondent was actually tried and convicted on a Texas misdemeanor charge presents some difficulty. Nevertheless, we believe the better interpretation, and that demanded by the constitutional text, is simply that respondent falls within the ambit of sections 2 and 3 so long as respondent's Texas conviction was for a crime that when committed in Arizona might be punished as a felony in Arizona.

B. Does the court have discretion over whether to remove a judge finally convicted of a crime punishable as a felony, or is he automatically removed from office?

There is no specific legislative intent to aid us on this issue. The electorate

---

3. We disregard for the moment misdemeanors involving moral turpitude, covered by Ariz. Const. art. 6.1, § 3. The Commission did not charge respondent with such a violation.

4. We do not imply that a judge charged with a felony but convicted of a lesser included misdemeanor offense falls within art. 6.1, § 3.

adopted article 6.1 in 1970 as part of the so-called Modern Courts Amendment, without any statement of intention as to the clauses in question. The publicity pamphlet distributed to the voters together with the proposed constitutional amendment is silent on the question posed.[5] Article 6.1 apparently is modeled after a similar provision in the California Constitution, and neither our research nor the submissions of counsel produced any relevant history or constitutional interpretation.

This being so, we struggle with the actual unclear text and interpret it as best we can to accomplish the obvious goals underlying the constitutional provisions. *See Baker v. Gardner*, 160 Ariz. 98, 101, 770 P.2d 766, 769 (1988).

We discern a textually prescribed, logical progression for dealing with judicial disciplinary cases. When a judge is first charged by indictment or information "with a crime punishable as a felony," art. 6.1, § 2 "disqualifie[s] [the judge] from acting as a judge, without loss of salary...." When convicted, but before the conviction becomes final, the judge's disqualification automatically continues.[6]

Upon conviction, section 3 provides that this court

> *may* suspend [the] judge from office without salary.... If his conviction is reversed the suspension terminates, and he shall be paid his salary for the period of suspension. *If* he is suspended and his conviction becomes final the supreme court shall remove him from office.

(emphasis added). Of course, the use of the words "may" and "if" indicates the constitution gives the court some discretion. *See Roller Village, Inc. v. Superior Court*, 154 Ariz. 195, 198, 741 P.2d 328, 331 (Ct.App.1987).

The Commission argues the only discretion the constitution gives the court is to decide between suspension with salary or without salary. We reject this argument for two reasons. First, the constitution does not itemize "suspension" with salary as an available sanction. Second, and more importantly, we are unable to conceive of any difference between disqualification with pay—which automatically occurs under section 2 when the charges are filed—and suspension with pay. The judge, having been charged, was in effect already suspended with pay when he was "disqualified" under section 2.

■ Thus, as we read section 3, after conviction this court has discretion to suspend the judge without salary, or permit the continuation of the disqualification with salary. If we suspend, and the conviction then becomes final, removal from office is mandatory. Ariz. Const. art. 6.1, § 3 (*"if* [the judge] is suspended and his conviction becomes final, the supreme court [then] *shall* remove him from office").[7] We believe such a reading of the constitution is the only one providing a sensible construction to the last sentence of section 3 by giving meaning to "may," "if," and "shall." This interpretation follows the constitutional text and furthers its objective of providing for the "removal of judges under the guidance and final determination of the Supreme Court...." ARIZONA SECRETARY OF STATE, PUBLICITY PAMPHLET, *Statement in Behalf of Propositions 102 and 103*, at 11 (1970).

---

**5.** Under Arizona law, a publicity pamphlet must accompany initiative measures and referenda presented to the electorate for their consideration. *See* A.R.S. § 19–123.

**6.** Though the constitution does not explicitly state this, it would be absurd to conclude that its provisions permit a judge, disqualified because charges had been filed, to resume official duties after conviction.

**7.** To construe the provision as requiring removal from office whenever a judge commits a crime chargeable as either a felony or misde-

meanor would require removal of judges convicted of misdemeanors such as presence at a dog fight (A.R.S. § 13–2910.02), unauthorized disclosure of electronic messages (A.R.S. § 13–2913), or refusing to provide for a spouse (A.R.S. § 13–3610).

While no doubt under some factual scenarios removal would be warranted for conviction of these and other class 6 felonies, under many others removal would be extreme in terms of injustice to the judge and also not be in the public interest.

Because removal is mandatory after suspension without salary, this court should impose suspension if, because of the inherent nature of the crime or the facts surrounding it, the criminal conduct warrants removal from office. If the judge has been suspended without pay and the conviction becomes final, the judge is to be removed from office without further consideration of the case, *i.e.*, summary removal.

If, however, the nature of the crime or the underlying facts were such that summary removal would not be the eventual appropriate sanction, this court may simply continue the judge on "disqualified" status. A judge continued as "disqualified" is not automatically removed from office on conviction. This does *not* mean that the judge suffers no eventual discipline, because art. 6.1, § 4 permits the imposition of judicial discipline on a variety of grounds, including " 'conduct prejudicial to the administration of justice that brings the judicial office into disrepute.' " *Biggins*, 153 Ariz. at 446, 737 P.2d at 1084 (quoting Ariz. Const. art. 6.1, § 4).

Having concluded this court has discretion over whether to suspend and, thus, remove respondent now that his conviction is final, we now consider how we should exercise that discretion in this case.

C. Should respondent be suspended and, thus, summarily removed from office because of the nature of his crime?

1. *The inherent nature of the offense.*

We do not consider possession of marijuana an insignificant offense by any means. We acknowledge, however, that possession of a small quantity of marijuana for personal use evidently has not been a rare occurrence in this country. The very fact that the legislature classified this crime in a manner permitting prosecution as either a felony or a misdemeanor indicates the crime is not of the highest order. Other jurisdictions hold a similar view. *See, e.g.,* 21 U.S.C. § 844 (West Supp.1988) (possession of small amounts of marijuana

for personal use is a misdemeanor under federal law); *and* Cal. Health and Safety Code § 11357(b) (West Supp.1989) (defining mere possession of not more than 28.5 grams of marijuana as a misdemeanor punishable by a maximum fine of $100).[8] The fact that the legislature has given trial judges discretion to treat the matter as a misdemeanor even after charging and conviction of a felony also indicates the appropriate weight to be accorded this particular offense.

We believe, also, the testimony of the Arizona Attorney General, who appeared as a character witness in favor of respondent, and the Maricopa County Attorney gives some indication that even among the highest ranks of this state's law enforcement officers the crime in question is not considered to be of great magnitude. We do not believe, for instance, the Attorney General would give character evidence for accused drug traffickers.

Mere possession of small amounts of marijuana for personal use has always been considered a crime *malum prohibitum* —wrong because prohibited by legislation. *In re Chase*, 299 Or. 391, 396, 702 P.2d 1082, 1086 (1985). The crime is a possessory offense, not a crime containing elements of "fraud, deceit or dishonesty, and does not involve harm to a specific victim. Neither is [it] one involving illegal activity undertaken for personal gain." *Id.* at 402, 702 P.2d at 1089 (finding possession of a controlled substance for personal use rather than for trafficking or sale is not a crime of moral turpitude); *see State v. Harvey*, 275 S.C. 225, 226–27, 268 S.E.2d 587, 587–88 (1980) (possession of marijuana does not involve moral turpitude; court indicating, after "exhaustive research," it had found no case holding mere possession of marijuana involved moral turpitude); *see also Blanton v. City of North Las Vegas,* —— U.S. ——, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989) (even driving while under the influence classified as a petty offense).

---

**8.** These statutes reflect the nearly unanimous view of the several states. All the states punish this offense as a misdemeanor. *See* Appendix (collection of state statutes).

We agree with the views of the Oregon court: one who sells prohibited substances not only violates the law but does so "for personal gain [and], by the same act, also directly contributes to physical harm to the purchaser. Sale and trafficking offenses meet the elements of moral turpitude. Possessory offenses do not." *Chase*, 299 Or. at 402, 702 P.2d at 1090. This court has already held possession of small amounts of marijuana for personal use is not a crime involving moral turpitude. *See State ex rel. Dean v. Dolny*, 161 Ariz. 297, 299, 778 P.2d 1193, 1195 (1989). We are not prepared to say that every citizen of this state who has ever had possession of a small quantity of marijuana has committed a crime of moral turpitude.

We take note also that the question of respondent's retention appeared on the ballot in the 1988 general election. The news media heavily reported on respondent's conviction. Despite this, a majority of the electorate voted to retain him in office. This decision of the electorate gives some perspective on the public's view whether the crime is *per se* one that, after final conviction, should result in summary removal from office.

Thus, although we do not make light of the crime, we are not prepared to say that possession of a controlled substance such as marijuana, for personal use and not for sale, is inherently and in every case such a crime as should lead to suspension without salary followed by summary removal from office, consequent destruction of a career, and disqualification from ever again holding any judicial office in Arizona.[9] *See* Ariz. Const. art. 6.1, § 4.

2. *Do the facts of this particular crime warrant summary removal?*

We are quite aware, of course, that summary removal would be, perhaps, the less controversial decision. There are those who will criticize us for not summarily removing a judge from office after conviction of illegal possession of a controlled substance. Doing the less controversial

thing, however, is not part of either this court's constitutional duty or our oath as justices. We sit as a court of law, and providing justice, even for judges, is our mandate even if it causes controversy.

It can be argued that summary removal from office for possession of marijuana is necessary for the good of the system, even if it is unjustly harsh on the one removed. Judicial disciplinary proceedings, however, are not punitive but are intended to protect the public interest by policing the profession and maintaining public confidence in the judicial system. *Haddad*, 128 Ariz. at 492, 627 P.2d at 223.

We do not believe anything in the background or past life of this respondent, not even the conduct that led to his conviction, indicates that the public needs protection from him. *Cf. Ackel*, 155 Ariz. at 43, 745 P.2d at 101 (Feldman, J., dissenting) (disagreeing, as being too lenient, with majority's censure of justice of the peace for corruption—soliciting sexual favors from litigant). Although in the short run, confidence in the judicial system might be better served by summary removal of this judge, we conclude it is unwise to seek this type of temporary benefit. In the final analysis, public confidence in the judicial system will be maintained only if the public understands that we strive to provide justice under law, even when the court must stand firm against emotional reaction and transient surges in popular will. We believe the public will have lasting confidence in the judicial system only if it perceives that we hold fast to principle.

We must, therefore, look at legal principle in determining the issue. If in the past neither soliciting sexual favors from a litigant (see *Ackel*) nor driving a car while under the influence of alcohol (see *Biggins*) was grounds for removal, how can we now say possession of a small amount of marijuana for personal use should lead to summary removal? Nothing in the facts of this case provides any indication that the offense was anything other than a simple possession case. The quantity was very

9. This does not mean the same can be said for the possession of all controlled substances.

small, no evidence of any kind raises even the suspicion of sale. No plea bargain was made to reduce a greater charge to a lesser. Finally, respondent's previous record is unblemished.

■ We hold, therefore, that neither the inherent nature of the crime of possession of marijuana for personal use nor the specific facts pertaining to respondent's commission of the offense warrants summary removal from office under art. 6.1, § 3.

D. The availability of sanctions under article 6.1, § 4.

1. *Are section 4 sanctions appropriate?*

Our holding does not place our imprimatur on respondent's conduct. Nor does it mean respondent's disqualification should end and he should resume "acting as a judge" without imposition of sanctions. Respondent's position requires him to judge and punish others, including those charged with possessing controlled substances. It is not only unseemly and hypocritical, but also violates the judicial oath of office when a judge commits the same offense for which he sits in judgment over others. Judges cannot uphold and support the laws while committing the very crimes for which they sentence others. Thus, "any criminal conviction of a judge is not a matter to be treated lightly." *Biggins,* 153 Ariz. at 443, 737 P.2d at 1081.

■ We hold that respondent's criminal conduct falls within the provisions of art. 6.1, § 4.[10] In *Biggins* we held that although a misdemeanor conviction of driving under the influence did not require that the judge be removed from office, it was "conduct prejudicial to the administration of justice that brings the judicial office into disrepute" within the meaning of art. 6.1, § 4. 153 Ariz. at 443–44, 737 P.2d at 1081–

82; *see also In re Whitaker,* 463 So.2d 1291, 1303 (La.1985) (personal use of marijuana in violation of criminal statute constitutes "conduct prejudicial to the administration of justice that brings the judicial office into disrepute"). We recognize that, in isolation, overuse of alcohol may not be as serious as use of marijuana, but we believe driving while under the influence of alcohol presents greater dangers to others. *Biggins,* therefore, is an appropriate guidepost.

■ Respondent claims his explanation of the circumstances leading to his arrest may foreclose the imposition of any discipline. We reject this suggestion. Although respondent contends he did not intend to or know he was in possession of marijuana, the Texas judge who heard his explanation found him guilty of intentionally and knowingly possessing marijuana. We believe he is bound by that finding and precluded from maintaining to the contrary before the Commission or this court. *See Farmers Insurance Co. of Arizona v. Vagnozzi,* 138 Ariz. 443, 446, 675 P.2d 703, 706 (1983) (litigated facts necessary to a prior valid judgment are binding in subsequent proceeding).[11]

We hold that the established facts require imposition of sanctions under art. 6.1, § 4.

2. *Is a further hearing appropriate under section 4?*

We must determine if the Commission need convene a further hearing under section 4. Respondent argues that he has already presented his evidence under this section and asks that we note that a majority of the Commission believed that if removal was not required and automatic under section 3, he should not be removed from office. Counsel for the Commission points out, however, that no section 4 hear-

---

10. See *ante* at 208, 778 P.2d at 243 for text of § 4.

11. *See also Standage Ventures, Inc. v. State of Arizona,* 114 Ariz. 480, 562 P.2d 360 (1977) (abandoning "mutuality" requirement in application of defensive collateral estoppel); *Wetzel v. Arizona State Real Estate Dep't,* 151 Ariz. 330,

333, 727 P.2d 825, 828 (Ct.App.1986) (recognizing use of offensive collateral estoppel, findings of fact made in attorney's disbarment proceedings are binding on the same disbarred attorney in real estate license revocation proceedings); Restatement (Second) of Judgments § 29 (1982).

ing has been convened and that as the Commission's counsel she has a responsibility to present the evidence she deems appropriate to guide the Commission in making its recommendation regarding the appropriate discipline.

Ordinarily we would agree, but believe remand is neither necessary nor appropriate. First, respondent tells us he has already submitted the evidence he considers relevant to a section 4 hearing. Next, our holding that respondent is precluded from advancing any explanation attempting to rebut a "knowing and intentional" possession relieves Commission's counsel of much of the evidentiary burden that might otherwise be necessary. The Commission has already told us that unless we are required to suspend without pay—and thus remove respondent—under art. 6.1, § 3, it believes we should exercise our discretion against such a procedure. Presumably, therefore, it holds the same view with respect to sanctions, such as removal, available under section 4. This court, however, is the final judge of law and fact in these proceedings. *Haddad*, 128 Ariz. at 491, 627 P.2d at 222. Finally, it is very much in the public interest that the matter be brought to a conclusion as expeditiously as possible.

Therefore, this court can and should proceed without further hearing and impose on respondent whatever sanctions are available and appropriate under art. 6.1, § 4.

### 3. *The sanctions available under section 4.*

In the 1988 general election, Arizona voters approved Proposition 102, which included amendments to the Arizona Constitution, art. 6.1, § 4. The relevant amendment expands this court's disciplinary authority by giving it the power to suspend, without pay, any judge for conduct prejudicial to the administration of justice that brings the judicial office into disrepute. The governor proclaimed this amendment effective on December 5, 1988. Previously,

the court's only alternatives in disciplining judicial misconduct under section 4 were censure or removal from office.[12]

We must, therefore, determine whether the added power of suspension without pay is available as a sanction against this respondent, whose conduct and conviction as well as the institution of disciplinary proceedings occurred prior to the effective date of the amendment. We note, however, that the conviction became final only after the effective date of the amendment.

### a. *The nature of judicial disciplinary proceedings.*

Judicial disciplinary proceedings, like attorney disciplinary proceedings, are neither criminal nor civil, but are *sui generis*. *Haddad*, 128 Ariz. at 492, 627 P.2d at 223; *cf.* Rule 54(a), Ariz.R.Sup.Ct., 17A A.R.S. (1988). Again, the goal of judicial discipline is not to punish the judge but to protect the public and the judiciary's integrity. *Haddad*, 128 Ariz. at 492, 627 P.2d at 223. Because judicial disciplinary proceedings are neither criminal in nature nor penal in objective, the *ex post facto* clauses of the federal and state constitutions do not prohibit application of judicial disciplinary rules to conduct predating the rules' effective date. *See Gary v. State Bar of California*, 44 Cal.3d 820, 827, 749 P.2d 1336, 1340, 244 Cal.Rptr. 482, 485 (1988) (use of disciplinary standards promulgated after attorney's conduct to enhance sanction is not prohibited by *ex post facto* principles).

It seems settled, therefore, that new rules adopted for judicial or attorney disciplinary proceedings may be utilized in proceedings concerning misconduct occurring *prior* to the new rules' promulgation. *See, e.g., McCoomb v. Commission on Judicial Performance*, 19 Cal.3d (Spec.Trib.Supp.) 1, 7, 564 P.2d 1, 4, 138 Cal.Rptr. 459, 462 (1977) (new rule establishing tribunal of appellate court justices to review disciplinary commission's recommendations was procedural only, did not adversely affect

---

**12.** The amendment was to *"expand the authority of the Supreme Court* by allowing [it] to suspend a judge without pay as an alternative to disciplining a judge by disqualification, suspension, removal or retirement." ARIZONA SECRETARY OF STATE, PUBLICITY PAMPHLET, *Legislative Council Arguments Favoring Proposition 102,* at 13 (1988) (emphasis added).

respondent justice's rights, and thus was not an *ex post facto* law; retroactive application was proper); *In re Barclay*, 82 Utah 288, 292, 24 P.2d 302, 304 (1933) (state bar may investigate and charge attorney with misconduct even though misconduct occurred prior to state bar's organized existence).[13]

*In re Brown*, 157 W.Va. 1, 197 S.E.2d 814 (1973), supports the view that a new rule relating to the availability of suspension may apply retroactively. Brown, an attorney, bribed a juror. The disciplinary rules in effect at the time of his conduct and resulting federal indictment did *not* allow for the interim suspension of an attorney's license pending an appeal of a conviction. Before Brown's actual conviction and the filing of a bar complaint, however, the rules were amended to allow for such interim suspension. The disciplinary agency sought to suspend Brown's license during his criminal appeal. Brown objected to the proposed suspension, claiming that because his crime and indictment occurred prior to the rule change, the interim suspension provision did not apply to his case.

The state supreme court disagreed. It held the rules existing at the time of the disciplinary proceeding applied. Summarily dismissing any *ex post facto* concerns, it held that because attorney disciplinary cases are *sui generis*, the new suspension rule might be applied retroactively to offenses occurring prior to the rule changes. *Id.* at 7, 197 S.E.2d at 818.[14]

b. *Policy reasons supporting retroactive application.*

As stated, judicial and lawyer disciplinary proceedings are analogous. *See Haddad*, 128 Ariz. at 491, 627 P.2d at 222. In both proceedings, this court retains the ultimate authority to find facts, make conclu-

sions of law, and impose discipline. *See In re Pappas*, 159 Ariz. 516, 526, 768 P.2d 1161, 1171 (1988); *Haddad*, 128 Ariz. at 491, 627 P.2d at 222. Also, the goals of both professional disciplinary systems are similar—protection of the public and policing special groups devoted to public service. *See In re Hoover*, 155 Ariz. 192, 197, 745 P.2d 939, 944 (1987) (goal of attorney discipline is to protect the public and police the profession); *Haddad*, 128 Ariz. at 492, 627 P.2d at 223 (public protection and policing judicial conduct). Neither disciplinary system seeks to punish the offender. *Pappas*, 159 Ariz. at 526, 768 P.2d at 1171; *Haddad*, 128 Ariz. at 492, 627 P.2d at 223.

Because of these nonpenal, beneficent objectives, this court's state constitutional power to achieve the twin objectives of professional discipline "should be construed flexibly." *Hoover*, 155 Ariz. at 197, 745 P.2d at 944 (upholding hearing committee's decision to combine attorney discipline and disability proceedings without benefit of express authorization by court rule). Thus, if the objectives of judicial discipline would best be served by suspending respondent without pay, rather than censuring or removing him, we believe the power to do so may be utilized if constitutionally available at the time discipline is imposed, even if that power first became available subsequent to the conduct giving rise to the discipline.

Accordingly, the conviction having become final, we hold that the following sanctions are appropriate for consideration: censure, suspension without pay, or removal from office.

4. *Resolution of the sanction issue.*
a. *Censure.*

We have concluded that censure is entirely inappropriate in this case. As noted previously, a judge is guilty of serious mis-

---

**13.** We realize the Utah court based its decision on the fact that it possessed common law power to discipline attorneys, while this court lacks any common law power to discipline judges. Because we have had constitutional authority to discipline judges since 1970, before respondent's conduct occurred, we believe *Barclay* is on point.

**14.** The court also noted that another preexisting rule authorized the application of rule amendments to pending investigations even if the unethical conduct occurred prior to the amendment. *Id.*

conduct when he commits the very offense for which he is called on to judge and sentence others. Nor do we believe it appropriate to treat a judge's possession of marijuana with a mere reprimand or slap on the hand. We are aware we have perhaps been less severe than appropriate in past treatment of serious offenses—sexual harassment in *Ackel* and driving under the influence in *Biggins*. Both of those cases, however, involved non-lawyers elected as justices of the peace. Respondent is a merit selection judge, constitutionally given special protection. *See generally* arts. 6 and 6.1. We believe he and others in that position should be held to a higher standard than elected, non-lawyers who hold a judicial or quasi-judicial office.

Finally, we believe a sanction more serious than censure is required considering the Texas court's finding that respondent's possession was knowing and intentional.

For the reasons stated, we deem censure too mild a sanction.

### b. *Removal.*

Many of the factors already discussed in this opinion militate against imposing the sanction of removal from office. Among these factors are the following:

1. The possession was evidently for personal use.

2. The judge's previous record in the armed services, at the bar, and in the judiciary.

3. The position of the law enforcement authorities who testified in his behalf.

4. The vote at the retention election in November 1988. We do not bow to popular majorities on these issues, but in determining whether removing respondent from office is appropriate, surely it is proper to consider that with knowledge of respondent's conviction of the offense, the electorate recently voted to retain him in office.

5. Precedent also supports our decision. Even holding respondent to a higher standard than in *Ackel* and *Biggins*, it is difficult to justify removing respondent for an offense involving neither corruption, *Ackel* (as characterized in dissenting opinion of

Feldman, J.), nor a danger to others, *Biggins; see also Whitaker*, 463 So.2d at 1303–04 (judge suspended for one year after personal use of marijuana, association with users and sellers of illegal drugs and with prostitutes, and violating the appearance of impartiality).

Recent precedent is even more compelling. Removal and disqualification from future office—a type of judicial capital punishment—seems peculiarly inappropriate for an offense that some may describe as "petty," so that an accused is not entitled to a jury trial. *See Dolny*, 161 Ariz. at 301–302, 778 P.2d at 1197–1198 (Corcoran, J., dissenting). If the ultimate sanction is appropriate for such "petty" offenses, what is appropriate for the judge who commits a more serious offense—one involving moral turpitude, abuse of the power of office, or corruption in office?

For all these reasons, we have come to the conclusion that removal would be unjustified as inappropriately severe.

### E. Suspension without pay

Although we avoid, to the extent possible, imposing unjust and inappropriately harsh sanctions on respondent, we must consider the dues he owes society and the judicial system. The public can be protected only if the sanction imposed warns every member of the judiciary of the severe consequences of conduct such as respondent's. Only in this way will we deter others and discipline the profession. We also believe public confidence in the integrity of the system can be promoted only if the public sees we deal severely, but justly, with our own.

■■■ We have concluded, therefore, that respondent must be suspended from office without pay. For the reasons stated in the preceding paragraph, we believe the suspension period should be very significant. Therefore, we suspend respondent for a period of one year, commencing from the time of respondent's disqualification as a judge—September 2, 1988. During this time, he has been collecting his salary but not performing the duties of his office. In

our view, it is inappropriate that the tax-payers suffer any loss because of respondent's illegal conduct. The financial burden should fall on respondent, whose conduct was the cause for his misfortunes. Therefore, commencing the suspension retroactively from the date of his disqualification is entirely proper.[15]

This means, of course, that whatever administrative work respondent has performed for the judicial system from the period September 2, 1988 to the present will have been performed pro bono—a result we deem appropriate. We also expect that from this date to the end of the suspension respondent will continue, without pay, to perform such administrative assignments as are given him by the presiding judge. The sanction also means that respondent must reimburse the State of Arizona and Maricopa County for his gross salary received from September 2, 1988 to date, or to perform his duties as a judge from September 2, 1989 forward for an equivalent period of time without pay. Respondent shall make arrangements with and satisfactory to the director of the Administrative Office of the Courts to implement this reimbursement sanction.[16]

The ultimate result is that respondent will have suffered materially for his conduct. Possession of one ounce of marijuana has seldom before entailed a sanction as severe as suspension without pay for a year. Even in criminal proceedings a fine of over $80,000 is unknown.[17] *See* Appendix (the survey reveals Indiana as having

the highest maximum fine ($5000) for this offense). Hopefully, this will serve as both a deterrent to others and an assurance to the public that we will treat judges severely for such inappropriate conduct. More important than the money involved is the opprobrium inevitably to be visited on respondent by the publication of this opinion.

## CONCLUSION

We hold that respondent, Judge Philip W. Marquardt, committed a crime "punishable as a felony under Arizona law" within the meaning of Ariz. Const. art. 6.1, § 3. Section 3 gives this court the discretion whether to continue his disqualification with pay or suspend him without pay and eventually remove him summarily. We further hold that the offense of possession of a small amount of marijuana for personal use is not inherently an offense warranting summary removal under section 3. We find, however, that discipline under art. 6.1, § 4 is appropriate and that temporary suspension without pay is the best of the available alternatives.

We therefore impose sanctions under art. 6.1, § 4 as follows: respondent shall be and hereby is suspended, without pay, from the office of judge of the superior court for a period of one year commencing September 2, 1988 and ending September 5, 1989 or until the mandate issues, whichever is later. Respondent shall reimburse any gross salary he received for the suspension period to the director of the Administrative

**15.** This retroactive suspension is also appropriate inasmuch as we suspend respondent for "conduct prejudicial to the administration of justice that brings the judicial office into disrepute." Unlike the sanctions available under sections 2 and 3, which become available only on accusation and conviction, the sanctions available under this provision are available upon proof of the judge's misconduct regardless of when, if at all, he is convicted for that misconduct. Thus, we need not be concerned with suspending respondent only on his conviction or from the date the conviction became final.

**16.** The director's office shall ensure that the state and county treasurers receive their share of respondent's forfeited salary. *See* A.R.S. § 12–128. Respondent and the director may shape the reimbursement schedule to fit respon-

dent's legitimate financial needs; *e.g.,* he may work full time, without salary, until he fully reimburses the state, or he may work at half pay until the state is reimbursed.

**17.** Neither suspension without pay nor imposition of that sanction on a retroactive basis is equivalent to or intended as the assessment of a fine in a criminal prosecution. It would seem to make little difference to respondent and perhaps be even somewhat less difficult that his suspension be made concurrent with his disqualification and that he not be compelled to spend yet another year without performing the duties of his office. Further, if we were unable to suspend respondent without pay and were faced, therefore, with the alternatives of only censure or removal, the choice would be clear—removal.

Office of the Courts for eventual disbursement to the state and Maricopa County. Assuming the mandate has issued, respondent may resume his duties as judge of the superior court on September 5, 1989. Unless respondent has fully reimbursed the state and county, before resuming his duties respondent may make arrangements with the director to work without salary or a reduced salary from the date his suspension terminates until full reimbursement has been made.

GORDON, C.J., and MOELLER, J., concur.

## APPENDIX

## POSSESSION OF
## MARIJUANA—FIRST OFFENSE

*ALABAMA* Ala.Code §§ 13A–12–214, 13A–5–7(a)(1) (1988)

Class A misdemeanor if for personal use only; maximum sentence one year.

*ALASKA* Alaska Stat. § 11.71.070 (1983)

For one-half ounce (14 grams), maximum fine $100.

*ARIZONA* Ariz.Rev.Stat.Ann. § 13–3405(A)(1); (B)(1) (Supp.1988)

Class 6 felony; possession of less than one pound; maximum sentence one and one-half years.

*ARKANSAS* Ark.Stat.Ann. §§ 5–4–401(b)(1), 5–64–215(1), 5–64–401(c) (1987)

Class A misdemeanor; maximum sentence one year.

*CALIFORNIA* Cal.Health & Safety Code § 11357(b) (West Supp.1989)

For less than 28.5 grams, maximum fine $100.

*COLORADO* Colo.Rev.Stat. § 18–18–106(1) (1986)

Class 2 petty offense for possession of not more than one ounce; maximum fine $100.

*CONNECTICUT* Conn.Gen.Stat. § 21a–279(c) (1989)

Misdemeanor as provided by § 53a–26; for possession of four ounces, maximum fine $1,000; maximum sentence one year, or both.

*DELAWARE* Del.Code Ann. tit. 16, § 4754, tit. 11 § 4206(b) (1988)

Class B misdemeanor; maximum sentence six months and such fine and other conditions as the court may order.

*DISTRICT OF COLUMBIA* D.C.Code Ann. § 33–541(d) (1988)

Misdemeanor; maximum sentence one year; maximum fine $1,000.

*FLORIDA* Fla.Stat.Ann. § 893.13(1)(g) (West Supp.1989)

First degree misdemeanor for possession of less than 20 grams; maximum sentence one year; maximum fine $1,000.

*GEORGIA* Ga.Code Ann. § 16–13–2(b) (1988)

For one ounce or less, a misdemeanor; maximum sentence one year; maximum fine $1,000, or both, or public works for period not more than 12 months.

*HAWAII* Haw.Rev.Stat. §§ 712–1249, 701–107(4) (1985)

Petty misdemeanor; maximum sentence one year.

*IDAHO* Idaho Code § 37–2732(c)(2) (Supp. 1988)

Misdemeanor if not more than three ounces; maximum sentence one year; maximum fine $1,000.

Felony if more than three ounces; maximum sentence five years; maximum fine $10,000.

*ILLINOIS* Ill.Ann.Stat. ch. 56½, ¶ 704 (Smith–Hurd 1985)

Class C misdemeanor for less than 2.5 grams; maximum sentence 30 days; maximum fine $500.

Class B misdemeanor for more than 2.5 grams, but less than 10 grams; maximum sentence six months; maximum fine $500.

Class A misdemeanor for more than 10 grams, but less than 30 grams; maximum sentence one year; maximum fine $1,000.

Class 4 felony for more than 30 grams but less than 500 grams; maximum sentence three years; maximum fine $10,000.

Class 3 felony for more than 500 grams; maximum sentence five years; maximum fine $10,000.

*INDIANA* Ind.Stat.Ann. §§ 35–48–4–11, 35–50–3–2 (Burns 1987)

Class A misdemeanor for possession of less than 30 grams; maximum sentence one year; maximum fine $5,000.

*IOWA* Iowa Code § 204.401(3) (West Supp. 1987)

Serious misdemeanor; maximum sentence six months in county jail; maximum fine $1,000; or both.

*KANSAS* Kan.Stat.Ann. § 65–4127b(a)(3) (Supp.1987)

Class A misdemeanor; maximum sentence one year; maximum fine $2,500. Possession of more than 1,500 grams, presumption of no probation. *See* Kan. Stat.Ann. § 65–4127e.

*KENTUCKY* Ky.Rev.Stat.Ann. § 218A.990(9) (Michie/Bobbs–Merrill Supp.1988)

Possession of less than eight ounces; maximum sentence 90 days in jail; maximum fine $250.

*LOUISIANA* La.Rev.Stat.Ann. § 40–966(D) (West Supp.1989)

Maximum sentence six months in jail; maximum fine $500.

*MAINE* Me.Rev.Stat.Ann. tit. 22, § 2383 (Supp.1988)

Possession of a usable amount; civil violation; maximum fine $200.

*MARYLAND* Md.Ann.Code art. 27, §§ 279(c)(7), 287(e) (1988)

Misdemeanor; maximum sentence one year; maximum fine $1,000; or both.

*MASSACHUSETTS* Mass.Gen.Laws Ann. ch. 94C, §§ 31, 34 (West 1984)

Misdemeanor; maximum sentence six months; maximum fine $500; or both. (Probation mandatory on first offense.)

*MICHIGAN* Mich.Stat.Ann. § 14.15(7403)(d) (Callaghan Supp.1989) [M.C.L.A. § 333.7403(d) ]

Misdemeanor; maximum sentence one year; maximum fine $1,000.

*MINNESOTA* Minn.Stat.Ann. § 152.15 (West 1989)

Petty misdemeanor; maximum fine $100; drug education program.

*MISSISSIPPI* Miss.Code Ann. § 41–29–139(c)(2)(A) (Supp.1988)

For one ounce or less, minimum fine $100; maximum fine $250. (Does not constitute a misdemeanor until third conviction.) (Non-public record which is expunged two years after conviction.)

*MISSOURI* Mo.Ann.Stat. § 195.200 1(1)(a) (Vernon Supp.1989)

Possession of less than 35 grams, class b misdemeanor; maximum sentence one year in county jail; maximum fine $1,000.

*MONTANA* Mont.Code Ann. §§ 45–9–102(2), 50–32–222(3)(j) (1987)

Misdemeanor if not more than 60 grams; minimum fine $100; maximum fine $500; maximum sentence six months.

*NEW HAMPSHIRE* N.H.Rev.Stat.Ann. § 318–B:26(II)(d) (Supp.1988)

Misdemeanor; maximum sentence one year.

*NEBRASKA* Neb.Rev.Stat. § 28–416(6)(a) (1985)

For one ounce or less, guilty of infraction, cited, fined $100, and assigned to attend a course.

*NEVADA* Nev.Rev.Stat.Ann. § 453.336(2)(d) (Michie Supp.1987)

Gross misdemeanor; maximum sentence one year in county jail; maximum fine $1,000.

*NEW JERSEY* N.J.Stat.Ann. § 2C:35–10(a) (West Supp.1989)

Disorderly person for possession of less than 50 grams; maximum sentence six months; maximum fine $1,000.

Crime of the 4th degree for possession of more than 50 grams; maximum sentence 18 months; maximum fine $7,500.

*NEW MEXICO* N.M.Stat.Ann. § 54–11–23(B) (Supp.1975)

Petty misdemeanor for possession of less than one ounce; maximum sentence 15 days; maximum fine $100.

Misdemeanor for possession of more than one ounce but less than eight ounces; maximum sentence one year; maximum fine $1,000.

Felony for possession of more than eight ounces; maximum sentence five years; maximum fine $5,000.

*NEW YORK* N.Y.Penal Law § 221 (McKinney 1980)

Unlawful possession of less than 25 grams; maximum fine $100.

Criminal possession in the 5th degree; possession in a public place or possession of more than 25 grams but less than two ounces; maximum sentence three months.

Criminal possession in the 4th degree; possession of more than two ounces but less than eight ounces; maximum sentence six months.

Criminal possession in the 3rd degree; possession of more than eight ounces but less than 16 ounces; maximum sentence four years.

Possession of more than 16 ounces but less than 10 pounds; maximum sentence 15 years.

*NORTH CAROLINA* N.C.Gen.Stat. §§ 90–94, 90–95(d)(4) (1985)

Misdemeanor; maximum sentence 30 days; maximum fine $100; or both.

*NORTH DAKOTA* N.D.Cent.Code. §§ 19–03.1–05(5)(M), 19–03.1–23(3) (Supp.1987)

For one-half to one ounce, class A misdemeanor; maximum sentence one year; maximum fine $1,000; or both.

For less than one-half ounce, a class B misdemeanor; maximum sentence 30 days; maximum fine $500; or both.

*OHIO* Ohio Rev.Code Ann. § 2925.11(C)(3) (Page 1987)

Minor misdemeanor if less than 100 grams; maximum penalty $100 fine.

*OKLAHOMA* Okla.Stat.Ann. tit. 63 §§ 2–204(C)(10), 2–402(B)(2) (West 1982)

Misdemeanor; maximum sentence one year.

*OREGON* Or.Rev.Stat. § 475.992(4)(f) (1987)

If less than one ounce, maximum fine $100. (Oregon is currently revising its marijuana statute to impose harsher sanctions.)

*PENNSYLVANIA* Pa.Con.Stat.Ann. tit. 35 § 780–104(1)(iv), 780–113(a)(31), (g) (Supp.1988)

Misdemeanor for less than 30 grams; maximum sentence 30 days; maximum fine $500.

*RHODE ISLAND* R.I.Gen.Laws §§ 21–28–2.08(d)(10), 21–28–4.01(C)(1)(b) (Supp. 1988)

Misdemeanor; maximum sentence one year; minimum fine $200; maximum fine $500; or both.

*SOUTH CAROLINA* S.C.Code Ann. §§ 44–53–190(d), 44–53–370(d)(2) (Lawyer's Co-op.1985)

Misdemeanor; maximum sentence six months; maximum fine $1,000; or both.

*SOUTH DAKOTA* S.D.Codified Laws Ann. §§ 22–42–6, 22–6–2 (1988)

For one ounce or less, a class 2 misdemeanor; maximum sentence thirty days; maximum fine $100; or both.

*TENNESSEE* Tenn.Code Ann. §§ 39–6–415(a)(1), 39–6–417(b)(1) (1988)

Misdemeanor; maximum sentence 11 months, 29 days; maximum fine $1,000; or both. (Judge may suspend sentence and order participation in drug rehabilitation program.)

*TEXAS* Tex.Rev.Civ.Stat.Ann. art. 4476–15, § 4.051(a) (Vernon Supp.1989)

Class B misdemeanor for possession of less than two ounces; maximum sentence 180 days; maximum fine $1,000.

Class A misdemeanor for possession of more than two ounces but less than four ounces; maximum sentence one year; maximum fine $2,000.

Class 3 felony for possession of more than four ounces but less than five pounds; maximum sentence 10 years; maximum fine $10,000.

Class 2 felony for possession of more than five pounds but less than 50 pounds; maximum sentence 20 years; maximum fine $10,000.

*UTAH* Utah Code Ann. §§ 58–37–8(2)(d), 76–3–204 (Supp.1988)

For one ounce or less, a class B misdemeanor; maximum sentence six months.

*VERMONT* Vt.Stat.Ann. tit. 18, § 4224 (1987)

Maximum sentence six months; maximum fine $500.

*VIRGINIA* Va.Code Ann. § 18.2–250.1 (1988)

For any possession, maximum sentence of 30 days; maximum fine of $500.

*WASHINGTON* Wash.Rev.Code Ann. § 69.50.401 (Supp.1989)

Misdemeanor; possession of up to 40 grams; maximum sentence 90 days; maximum fine $1,000; or both.

*WEST VIRGINIA* W.Va.Code § 60A–4–401 (1989)

Misdemeanor; first offense automatically diverted.

*WISCONSIN* Wisc.Stat.Ann. § 161.41(3) (West 1989)

Misdemeanor; maximum sentence 30 days; maximum fine $500.

*WYOMING* Wyo.Stat. § 35–7–1031(c) (1988)

Maximum sentence six months; maximum fine $750.

CLABORNE, Judge, specially concurring:

I write not because the majority's construction of our constitution is wrong, for it is not. Nor do I write because I feel that the result in this case is not correct, for it is. I write because the dissent in this case portrays our result as somehow lowering the standard by which judges must live.

The dissent somehow concludes that Judge Marquardt was convicted of a felony. In fact, he was convicted of an offense which is a simple misdemeanor in Texas, and which *may* be designated a felony in Arizona. The dissent also attributes some sinister motive to the manner in which the judge decided not to appeal this misdemeanor conviction. Speculation is not a judge's occupation. If the dissent were restricted only to constitutional construction, I would refrain from this special concurrence. The dissent, however, goes further.

With the exception of the State of Arizona, no state in the United States has considered first offense possession of a small amount of marijuana to be an offense which deserves punishment greater than a misdemeanor. It seems only reasonable that in deciding the fate of a judge who has for the first time possessed a small amount of marijuana in another state, we should review all of the circumstances concerning his fate in no less an atmosphere than a superior court who decides the same fate of any citizen prosecuted under this statute.

The purpose of the sanction of removal from office of a sitting judge is practically universal in America. We said in *In re Haddad*, 128 Ariz. 490, 492, 627 P.2d 221, 223 (1981):

The purpose of judicial discipline *is not to punish the individual judge*, but to maintain the high standards of the judiciary and the proper administration of justice. Judicial discipline protects the public and the integrity of the judicial process and is a balancing of the need for an independent judiciary with the necessity for removal of those who do not measure up to the high standards required of a person holding judicial office. (citations omitted.) (emphasis added.)

*See also Matter of Benoit*, 487 A.2d 1158, 1173–74 (Me.1985); American Judicature Society, Judicial Discipline and Disability Digest, 1981–85 Supplement, Part 2, § IIB3 (1984).

How does the judiciary retain the confidence of the public? I am sure neither the court, the commission, nor the lawyers who participated in this proceeding relished their roles or the circumstances of this case. I must rein my temper and quell my indignation when viewing the acts of this judge. I agree with the Michigan court when, in considering an "off the bench" transgression, it said:

[T]hat a judge, whether on or off the bench, is bound to strive toward creating and preserving the image of the justice system as an independent, impartial source of reasoned actions and decisions. Achievement of this goal demands that a judge, in a sense, behave as though he is always on the bench.

*In the Matter of Bennett*, 403 Mich. 178, 186, 267 N.W.2d 914, 922 (1978).

Our judicial system requires us to weigh and balance the rights of society and of the

individual. We place on our scales society's needs and protection and balance those by reviewing the aggravating and mitigating circumstances surrounding the transgression. We then, and only then, decide.

In the search for essential justice, it is instructive to consider how other jurisdictions have dealt with erring judges. In California, a superior court judge to "friends," court personnel, court clerks, and in "private" continually referred to black litigants as "coons," "jigs," "niggers," and to Hispanics as "Mexican jumping beans" and "spics." His discipline was public censure. *See In re Stevens,* 31 Cal.3d 403, 403–404, 183 Cal.Rptr. 48, 48–49, 645 P.2d 99, 99–100 (1982). In Louisiana, a general jurisdiction judge, over a period of time, smoked marijuana and consorted with prostitutes. He was suspended for one year. *In re Whitaker,* 463 So.2d 1291 (La.1985). In Oregon, a superior court judge, when seeing his estranged wife out with another man, rammed the man's car with his own, beat his wife and was charged with reckless endangerment. He was censured. *In re Conduct of Roth,* 293 Or. 179, 645 P.2d 1064 (1982). In my judgment, these incidents are far graver than the matter at hand. Should we not weigh this judge's illegal conduct against eighteen years of service as a judge? Should we not consider the character testimony in his behalf by the attorney general of this state as well as the county attorney of the most populous county in the state? Should we refuse to consider his retention in office by the voters of this state? Should we not weigh this one mistake against the other works of this man? During his years on the bench Judge Marquardt's decisions have resulted in 135 appellate opinions. Approximately one-half of these were criminal appeals. The court of appeals and supreme court affirmed him over 90% of the time. A review of the written criminal appeals reflects sentences that were firm, and which clearly protected society and the victim. They were also just. His civil appeals reflected knowledge of the law and reasoned deliberation and fairness. Other courts have weighed the circumstances surrounding a transgression by a judge. *In re Whitaker,* 463 So.2d 1291, 1303 (La.1985) (the court weighed the probability of reoccurrence and the credibility of the judge); *See In re Turner,* 421 So.2d 1077, 1081 (Fla.1982) (the court weighed letters of confidence, a sincere acknowledgment of the error, and an effort to change); *In re Conduct of Roth,* 293 Or. 179, 182, 645 P.2d 1064, 1067 (1982) (the court weighed official excellence, prosecutor's confidence and respect for the judge, and found the incident an isolated one); *In re Donohue,* 390 Mass. 514, 518, 458 N.E.2d 323, 327 (1983) (the court weighed devoted service to court and community). This weighing occurs whether it is suspension or removal. *See also* American Judicature Society, Judicial Discipline and Disability Digest, *supra,* at Part 5, § IVA.

This judge has received a substantial suspension with a loss of $80,000.00 in salary and the· public censure attendant to this decision. Is this sanction not severe enough to maintain public confidence? In a recent Arizona case, the issue was whether possession of marijuana qualified as a crime serious enough to justify a jury trial. Yet, the dissenter here said it was not such a crime:

I would hold that the moral quality of a possession of marijuana charge is no worse than that of other offenses Arizona courts have held to be insufficient to satisfy *Rothweiler*'s [*v. Superior Court of Pima County,* 100 Ariz. 37, 410 P.2d 479 (1966)] second factor. *See Spitz v. Municipal Court,* 127 Ariz. 405, 621 P.2d 911 (1980) (sale of alcoholic beverages to minors); *State ex rel. Baumert v. Superior Court* [127 Ariz. 152, 618 P.2d 1078 (1980)] (disorderly conduct); *Bruce v. State,* 126 Ariz. 271, 614 P.2d 813 (1980) (simple assault); *Goldman v. Kautz,* 111 Ariz. 431, 531 P.2d 1138 (1975) (simple assault and battery); *O'Neill v. Mangum* [103 Ariz. 484, 445 P.2d 843 (1968)] (drunk and disorderly conduct); *State ex rel. Dean v. City Court* [141 Ariz. 361, 687 P.2d 369 (App. 1984)] (reckless driving); *City of Phoenix v. Jones,* 25 Ariz.App. 265, 542 P.2d

1145 (1975) (carrying a concealed weapon).

*State ex rel. Dean v. Dolny*, 161 Ariz. 297, 303, 778 P.2d 1193, 1199 (1989) (Corcoran, J., dissenting).

*In re Ackel*, 155 Ariz. 34, 745 P.2d 92 (1987) may have been wrongly decided. I am not obliged nor empowered to re-decide what was essentially a case of judicial corruption, i.e., trading power for sexual favors. I am to help decide only this case. I certainly agree that the exercise of power makes judges different. Here Judge Marquardt and the Texas misdemeanor have been dealt with in a reasoned way. Humane judgment provides us with the capacity to feel and, therefore, to hopefully understand, to know and deal with human frailty, *including our own*. I feel this court has kept its faith with actual justice and has dealt with judicial discipline in a reasoned, honorable and humane way.

CAMERON, J., did not participate in this decision; pursuant to Ariz. Const. art. 6, § 3, CLABORNE, J., of the Court of Appeals, Division One, was designated to sit in his stead.

CORCORAN, Justice, dissenting:

I respectfully dissent. We are called upon to discipline a judge of the superior court who stands convicted of the crime of intentionally or knowingly possessing marijuana. Respondent's explanation of the circumstances of the possession is, to put it mildly, disingenuous. The trial court convicted respondent in the summer of 1988, and he appealed from the conviction while publicly proclaiming his innocence. That was the posture of his case at the time of the November retention election in which he was retained. It was not until February 23, 1989—over 3 months *after* the election—that respondent changed his posture, withdrew his appeal, and let the conviction become final.

I agree with the majority that the crime of possession of marijuana, A.R.S. § 13–3405(B)(1), is one "punishable as a felony under Arizona ... law." Ariz. Const. art. 6.1, § 2. I only can conclude that the intent and purpose of §§ 2 and 3 require that we deal with respondent's conviction as a felony.

### Relationship Between § 4 and §§ 2 and 3

I do not believe that § 4 has any application to this case. Section 4 does *not* deal with a judge convicted of a felony, but rather with judicial disability, willful misconduct in office, willful and persistent failure to perform duties, habitual intemperance, and conduct prejudicial to the administration of justice that brings the judicial office into disrepute. Although § 4 arguably could be used to discipline a judge for *conduct* amounting to a felony, §§ 2 and 3 were designed to deal precisely with a *final felony conviction*. Section 4 deals with conduct less serious than the conviction of a felony, or at least to situations where no felony conviction has become final.

Because respondent's conviction is final, § 4 has no application to this case.

### Relationship Between § 2 and § 3

Patently, upon the filing of the charge, respondent was "disqualified" with pay under § 2. Upon conviction, this court could have determined either to (1) continue the disqualification with pay under § 2, or (2) "suspend" respondent without pay under § 3. However, before this court made any determination as to continued disqualification or suspension, respondent's conviction became final.

The majority is correct that if respondent had been suspended without pay pursuant to § 3, upon finality of the conviction, he must be removed from office. I disagree with the conclusion of the majority that if this court determined not to suspend respondent under § 3, but rather to continue his disqualification under § 2, this case somehow "falls" down to § 4, allowing this court in its discretion to censure, suspend without pay, or remove respondent. Section 4 deals with situations where no felony conviction has become final. Section 3

mandates the removal of a judge whose felony conviction becomes final, whether he is disqualified or suspended. Respondent should be removed.

*Exercise of Discretion Under § 4*

Assuming (as the majority concludes) that this court has discretion under § 4 to censure, suspend without pay, or remove respondent, I believe respondent should be removed.

The majority states that "[t]he very fact that the legislature classified this crime [possession of marijuana] in a manner permitting prosecution as either a felony or a misdemeanor indicates the crime is not of the highest order." That generalization may be true when applied to misdemeanors only. However, §§ 2 and 3 require this court to treat the offense *"as a felony"*—a crime that *is* "of the highest order."

The majority opinion and special concurrence mischaracterize my dissent in *State ex rel. Dean v. Dolny,* 161 Ariz. 297, 778 P.2d 1193 (1989), which asserts that the penalties faced by a person convicted of *misdemeanor* possession of marijuana are not so serious as to mandate a jury trial. That dissent has little relevance here because §§ 2 and 3 require us to consider respondent's conviction *"as a felony."*

I agree with Justice Feldman's dissent in *In re Ackel,* 155 Ariz. 34, 43, 745 P.2d 92, 101 (1987), which concluded that Justice of the Peace Ackel should have been removed from office. The *Ackel* majority indicated that lower standards are applied to an elected limited jurisdiction lay judge than should be applied to a general jurisdiction judge. Unfortunately, the low standard approved by the majority in *Ackel* is being applied to respondent—despite the majority's belief that respondent is being held to a higher standard than that imposed in *Ackel.*

The principle that should be applied to deter other judges from similar conduct is: A sitting judge who possesses illegal drugs should not be a judge. We should overrule *Ackel* and adopt "the highest standards of conduct"—not a low standard—for *all*

judges. *In re Haddad,* 128 Ariz. 490, 501, 627 P.2d 221, 232 (1981).